IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LYMPHEDEMA & WOUND CARE CONSULTANTS OF AMERICA, INC. D/B/A LYMPHEDEMA & WOUND CARE INSTITUTE AND LYMPHEDEMA & WOUND CARE INSTITUTE OF TEXAS, INC. D/B/A LYMPHEDEMA AND WOUND CARE INSTITUTE, | § § § § § § § § § | |
| Plaintiffs, | § § | No. 3:19-cv-2164-X |
| V. | § § | |
| HEALTH CARE SERVICE CORPORATION d/b/a BLUE CROSS & BLUE SHIELD OF TEXAS, | § § § § | |
| Defendant. | § § | |

**MEMORANDUM OPINION AND ORDER**[1]

Defendant Blue Cross and Blue Shield of Texas, an unincorporated division of Health Care Service Corporation, ("BCBSTX"), has filed Defendant's Motion to Compel Plaintiffs to Produce Documents and Respond to Interrogatories. *See* Dkt. No. 40 (the "MTC").

---

[1] Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

BCBSTX seeks an order compelling Plaintiffs Lymphedema & Wound Care Institute of Texas, Inc., d/b/a Lymphedema & Wound Care Institute ("LWCIT") and Lymphedema & Wound Care Consultants of America, Inc., d/b/a Lymphedema & Wound Care Institute ("LWCCA"), to respectively produce the following:

> 1. LWCIT and LWCCA to each produce an updated excel export or spreadsheet that fully identifies the Claims each Plaintiff is putting at issue, along with all of the information requested by BCBSTX's Request for Production, Set One, No. 6, and the factual and legal basis that gives rise to each Claim as requested in Interrogatory, Set One, No. 2(a) and (c);
>
> 2. LWCIT and LWCCA to each produce all relevant medical records, as required by Request for Production, Set One, No. 1;
>
> 3. LWCIT and LWCCA to each serve BCBSTX – pursuant to Interrogatory, Set One, No. 2(d) – with an amended interrogatory response identifying the provisions in Plaintiffs' contracts with BCBSTX that allegedly support their respective claim for additional reimbursement for the Claims at issue;
>
> 4. LWCIT and LWCCA to complete their production of all documents responsive to Request for Production, Set One, Nos. 1-5, 9, 11-12, and 14;
>
> 5. LWCIT to produce all documents requested in BCBSTX's Request for Production, Set Two, to which LWCIT never responded, much less objected;
>
> 6. LWCIT to serve BCBSTX with all answers to BCBSTX's Interrogatories, Set Two, to which LWCIT never responded, much less objected; and
>
> 7. LWCCA to produce all documents requested in BCBSTX's Request for Production, Set Two, which it has already agreed to produce as well as the documents it has committed to produce in response to Interrogatory, Set Two, Nos. 8-9, and Request for Production, Set Two, No. 24.

Dkt. No. 30 at 1-2 (footnote omitted); *see also id.* at 16-17.

United States District Judge Brantley Starr has referred the MTC to the undersigned United States magistrate judge for a hearing, if necessary, and determination under 28 U.S.C. § 636(b). *See* Dkt. No. 47.

LWCIT and LWCCA jointly responded to the MTC, *see* Dkt. No. 44, and BBSTX filed a reply, *see* Dkt. No. 54.

## Background

The parties are very familiar with the background of this case. So the Court will not repeat it here and will instead focus on the background of disputed discovery requests and responses.

As to the discovery requests at issues, BCBSTX explains as follows:

> In this case, Plaintiffs allege that they are entitled to payment from BCBSTX for services related to the treatment of lymphedema that Plaintiffs allegedly provided to BCBSTX members. Although Plaintiffs' Original Verified Petition alleged that Plaintiffs provided a variety of services to BCBSTX members, the Petition does not identify such services. In fact, Plaintiffs have yet to identify both the precise services at issue (and corresponding Current Procedural Terminology ("CPT") and Healthcare Common Procedure Coding System ("HCPCS") Codes) as well as the factual and legal grounds that Plaintiffs claim entitle them to additional payments from BCBSTX, despite BCBSTX's discovery requests seeking such information and Plaintiffs' failure to object to those requests.
> On July 9, 2020, BCBSTX served its First Set of Requests for Production to Plaintiffs ("RFP, Set One") and First Set of Interrogatories to Plaintiffs ("ROG, Set One"), seeking, *inter alia*, to discover the Claims Plaintiffs are putting at issue in this lawsuit as well as the factual and legal bases for Plaintiffs' assertions they are owed damages for such Claims. *See* Declaration of Thomas C. Hardy ("Hardy Decl."), Exs. A, B. Notably, Plaintiffs did not object to any of BCBSTX's Interrogatories in Set One. *See* Hardy Decl., Exs. C-1, C-2 (providing answers without objections to BCBSTX's ROG, Set One). Although Plaintiffs have made some productions in response to RFP, Set One, and provided some responses to ROG, Set One, both the productions and responses remain deficient in ways counsel for BCBSTX has pointed out in various meet and confer calls with counsel for Plaintiffs, as well as in detailed deficiency letters sent on numerous occasions, including on September 25, 2020, November 18, 2020, and December 30, 2020. Hardy Decl., ¶¶ 9, 17, and 32, Exs. E, H, and K.

Specifically, BCBSTX's meet and confer correspondence has identified the following deficiencies relevant to this Motion:

***First***, Plaintiffs have failed to complete their production of documents in response to RFP, Set One, No. 6, which requested a data export in Excel that identifies the Claims Plaintiffs are putting at issue in this lawsuit. Hardy Decl., ¶ 5, Ex. B. This information is vital to BCBSTX's defense of the case. The Excel exports Plaintiffs have produced, however, do not make clear what Claims are at issue and fail to include all of the information RFP, Set One, No. 6 requested. Hardy Decl., ¶¶ 7, 8, 18, 26-27, 31. Namely, the Excel exports list thousands of dates of service for the treatment of lymphedema regardless of whether each such date of service and corresponding CPT and HCPCS codes are even at issue. *Id.*, ¶¶ 27, 31. Despite multiple requests by BCBSTX's counsel that both LWCIT and LWCCA confirm that Plaintiffs only seek damages limited to services billed under CPT Code 97140 and HCPCS Code S8950 on the same date of service with respect to the same patient, as Plaintiffs have represented during discussions between counsel, *see, e.g., id,* ¶ 19, 27-28, Plaintiffs have yet to identify the Claims at issue. *Id.*, ¶ 35. Moreover, Plaintiffs have failed to include all of the information requested in RFP, Set One, No. 6. *Id.*, ¶ 7, 18, 27, 31.

***Second***, Plaintiffs have failed to include in the Excel exports Plaintiffs' responses to ROG, Set One No. 2(a) and (c). Interrogatory 2(a) and (c) requested that Plaintiffs identify "the factual and legal basis" for any additional amount Plaintiffs claim they are entitled to "each Claim." Hardy Decl., Ex. A, ROG, Set One, No. 2. Plaintiffs' generic answer that they are entitled to additional payments because, among other things, BCBSTX purportedly placed Plaintiffs in pre-payment review for certain unidentified Claims, wrongly recouped money for other unidentified Claims, and/or "bundled" some other unidentified Claims is non-responsive and does not identify which of the thousands of dates of service are impacted by which theory of liability or recovery. Hardy Decl., Exs. C-1, C-2. Interrogatory No. 2 (a) and (c), to which Plaintiffs did not object, requires that Plaintiffs identify the factual and legal bases that entitle Plaintiffs to additional relief for each Claim, as well as the additional amount Plaintiffs contain they are entitled to receive per claim. *Id.* This requires that Plaintiffs state, for example, that BCBSTX wrongly "bundled" services, the factual and legal basis for such a contention for each Claim Plaintiffs allege to be impacted by that basis for relief, and the amount Plaintiffs contend they are entitle to receive per Claim. Plaintiffs no doubt possess this information, and it is critical to permit BCBSTX to understand the nature of Plaintiffs' claims against it. By failing to

provide any factual detail – despite not objecting and continually promising that the information is forthcoming – regarding the substance of its allegations as to each Claim, Plaintiffs seem to be attempting to hide the ball in order to hamper BCBSTX's defense.

**Third**, Plaintiffs have failed to completely respond to ROG, Set One, No. 2(d), which asks that Plaintiffs identify each provision in their agreement with BCBSTX that supports Plaintiffs' claim to any additional amount of reimbursement for each Claim. Hardy Decl., Exs. C-1, C-2. Plaintiffs did not object to this Interrogatory, but only generically responded that BCBSTX has purportedly violated Article 1, Section 1 and Article 2, Section 2 of the contracts. *Id.* There are no such Sections in the contracts, however, *see*, ECF No. 1-1, p. 14 & 88 of 98, and such a generic response does not adequately explain the legal basis for each Claim. Despite BCBSTX's repeated requests for complete responses, *see e.g.*, Hardy Decl., ¶ 17, Ex. H., p. 70, Plaintiffs have failed and refused to provide them. Hardy Decl., ¶ 35. The responses to ROG, Set One, No. 2(d) are highly relevant and critical to BCBSTX's defense because this is a breach of contract case; BCBSTX must understand what contract provisions Plaintiffs contend were breached or otherwise support their case for each Claim.

**Fourth**, Plaintiffs have failed to provide medical records in response to RFP, Set One, Nos. 1, 12 and 14. To date, LWCIT has produced medical records for only **four patients**. Hardy Decl., ¶ 20, Ex. H, p. 71. In addition, even with respect to those patients, the records LWCIT produced were partial and incomplete. *Id.* LWCCA has yet to produce medical records for the thousands of dates of service in its spreadsheet (outside of 20 patient file samples) despite many promises to first make them available for inspection and copying (but never providing dates for inspection) and later agreeing to produce them electronically. Hardy Decl., ¶¶ 12-13, 29, 35. The medical records are critical to BCBSTX's ability to evaluate whether, as an initial matter, Plaintiffs even *performed* the medical services they contend they performed, as well as whether the medical services performed properly support the CPT and HCPCS codes Plaintiffs billed. BCBSTX is unable to evaluate whether Plaintiffs performed and submitted accurate claims for their alleged medical services unless and until BCBSTX receives the outstanding medical records.

**Fifth**, Plaintiffs have failed to make a full production of documents in response to RFP, Set One, Nos. 1-5, 9, 11-12, 14, despite agreeing to produce responsive documents.

**Finally**, LWCIT and LWCCA have failed to produce all documents requested in BCBSTX's Second Set of Requests for Documents ("RFP, Set Two") and BCBSTX's Second Set of

Interrogatories ("ROG, Set Two") – both served on November 18, 2020. Hardy Decl., Exs. L, M. BCBSTX's second set of discovery requests concern a settlement (the "Settlement") both LWCIT and LWCCA (and their owners) entered into with the government to resolve False Claims Act allegations4 that, among other things, Plaintiffs submitted claims to the Medicare Program for physical therapy treatments provided by unqualified therapists. *See Lymphedema & Wound Care Institute Settle False Claims Act Allegations*, https://www.justice.gov/usao-sdtx/pr/lymphedemawound-care-institute-settle-false-claims-act-allegations (last visited December 23, 2020). While LWCCA has produced the Settlement agreement itself, RFP, Set Two, and ROG, Set Two, also request communications related to the Settlement and documents related to the ownership of each Plaintiff.

On information and belief, Plaintiff LWCCA and Plaintiff LWCIT are closely related and may at one point even have been engaged in cross-billing, which is the practice of providing services at one facility and billing under the name of another. *See, e.g.*, Case No. 4:19-cv-04300, ECF No. 1, ¶ 50 (alleging that both LWCIT and LWCCA were engaged in cross-billing). Accordingly, the information sought in RFP, Set Two, and ROG, Set Two, is highly relevant to BCBSTX's potential defenses, including BCBSTX's defense regarding whether the medical services alleged in this case were actually performed. Furthermore, LWCIT has failed to provide any response – let alone object – to either RFP, Set Two, or ROG, Set Two. Hardy Decl., ¶ 33, Exs. L, M. Indeed, counsel for LWCIT informed counsel for BCBSTX that LWCIT would respond after the deadline – by December 22, 2020 – and failed to meet that deadline as well. Hardy Decl., ¶ 33. LWCCA did respond and has agreed to produce documents responsive to, *inter alia*, RFP, Set Two, No. 24 as well as documents responsive to ROG, Set Two, Nos. 8-9. Hardy Decl., ¶ 3, n.3, Exs. N, O. To date, however, LWCCA has not produced those documents. Hardy Decl., ¶ 3, n.3.

Despite multiple attempts by counsel for BCBSTX to meet and confer with counsel for Plaintiffs on all of the foregoing deficiencies and reiterating that BCBSTX hoped to resolve these deficiencies without court intervention, Plaintiffs either did not respond or did not resolve the deficiencies. Hardy Decl., ¶ 35. What is more, Plaintiffs unduly delayed the filing of this Motion by among other things, 1) repeatedly producing Excel exports (or spreadsheets) that were deficient and that did not include the requested information, *id.*, ¶¶ 7-8, 26-27, 31; 2) promising that the information and documents Plaintiffs had agreed to produce were forthcoming, but failing to deliver the documents and/or provide dates for BCBSTX's counsel to inspect them, *id.*, ¶¶ 10, 13; 3) representing that Plaintiffs were "working on" addressing the

-6-

deficiencies but, failing to do so, *id.*, ¶¶ 15-17, 21; and 4) otherwise requesting extensions of discovery deadlines and failing to meet the extended deadlines. *id.*, ¶¶ 24-25, 33.

LWCIT and LWCCA respond that BCBSTX,

among other requests addressed below, seeks to compel Plaintiffs to specifically describe the nature of the dispute for each claim at issue. This request is disproportionate to the needs of this case. Plaintiffs have already provided Defendant with sufficient information to identify for itself the nature of each dispute, including descriptions of services provided, related CPT codes, and billed charges. Defendant's request would require Plaintiffs, both small health care providers lacking sufficient administrative staff and resources, to spend months combing through tens of thousands of claims already provided to Defendant. While Plaintiffs are willing to compromise and provide the requested information for a representative sample of claims, providing such information for each and every claim would severely burden Plaintiffs in proportion to the actual value of the requested discovery. ....

This suit concerns Defendant Health Care Services Corporation, d/b/a Blue Cross/Blue Shield's ("Defendant" or "BCBSTX") failure to make certain payments required under its provider contracts with Plaintiffs for treatment provided to BCBSTX members. Plaintiffs have worked diligently to respond to Defendant's overbroad discovery requests. Nevertheless, Defendant, the goliath in this fight, filed its Motion to Compel seeking to force Plaintiffs to spend hundreds of additional hours producing information about their claims that is clearly not proportional to the needs of this matter. As explained below, Defendant already has the information it needs to evaluate Plaintiff's claims.

**A. Defendant contracted to pay Plaintiffs for treating BCBSTX patients for lymphedema.**

LWCIT formerly operated and LWCCA continues to operate full-service, out-patient clinics to treat patients suffering from lymphedema – a condition caused by the accumulation of lymphatic fluid in the interstitial tissue that causes swelling, often in the arms or legs and also other parts of the body. Plaintiffs' treatments to lymphedema patients include complex decongestive physiotherapy, manual lymph drainage, vasopneumatic compression, compression bandaging systems, diet, nutrition, and exercise education, and wound care management. Defendant contracted with Plaintiffs to provide these services to its members. Under the provider agreements between

Plaintiffs and Defendant, Defendant was required to "[d]irectly pay [Plaintiffs] up to the Maximum Allowance under a Subscriber's specific contract/certificate..." *See* Dkt. 2, Exhibits A-1 and B-1. Defendant agreed to remit these payments to Plaintiffs when Plaintiffs submitted complete and properly executed claims within 30 days of the date of service. *Id*.

**B. From 2015 to 2017, Defendant subjected Plaintiffs to an unnecessary pre-payment audit.**

The discovery requests at issue, discussed below, are only Defendant's latest effort to harass Plaintiffs and skirt its payment obligations. The parties' contentious relationship started when Defendant put LWCIT on a pre-payment audit on May 7, 2015 that did not end for almost two years. Once the pre-payment audit began, Defendant confused LWCCA with LWCIT because "Lymphedema" appears in both names and, due to its own confusion, unnecessarily subjected LWCCA to the same audit. Had Defendant looked up the two entities within its own software system, it would have quickly realized that the two Plaintiffs are distinct, unrelated entities withdifferent tax identification numbers and National Provider Identifier numbers.

Once the pre-payment audits began, Defendant continued to harass LWCCA and LWCIT by assigning a series of representatives to evaluate Plaintiffs' many appeals and pleas for justification of the audits. The representatives would come and go – it was a revolving door. When one of the representatives would finally admit that he or she understood the audit mix-up and promised to fix it, the representative would be reassigned to another project or leave Defendant's employ altogether. These communications were documented in emails and correspondence, all of which have been produced.

**C. During the pre-payment audit, Plaintiffs gave Defendant more than enough patient information to evaluate Plaintiffs' claims.**

During the audits, Plaintiffs submitted claim forms for *every patient* and for *every date of treatment* to Defendant with patient identification, dates of service, descriptions of services provided, CPT codes, billed charges, provider identification, and patient medical records. *See* **Exhibit 1**, Declaration of Ryan Chuston. In some cases, Plaintiffs had to submit these forms multiple times because Defendant lost Plaintiffs' records repeatedly. *Id*. Defendant's onerous audit requirements ultimately caused LWCIT to shut down and placed great financial hardship on LWCCA.

**D. Now, Defendant demands that Plaintiffs again produce all of this same patient information - and in unnecessarily greater detail.**

Defendant now demands that Plaintiffs again produce what is essentially the same information Plaintiffs *already* produced during the pre-payment audit, but in even greater detail. Defendant sent discovery requests for the first time in June 2020, barely seven months ago. LWCCA and LWCIT have worked diligently to respond to Defendant's discovery requests in the midst of a pandemic, short-staffed and often remotely. But as discussed below, many of Defendant's requests are unreasonably broad, redundant, of little value to Defendant, and disproportional to the needs of this case.

BCBSTX replies that LWCIT and LWCCA

seek to recover millions of dollars for allegedly underpaid medical claims but have not articulated the factual and legal bases for that demand, let alone produced documents supporting it. They have had nearly two years to do so, including identifying which underlying Claims were supposedly underpaid and why, and to produce the supporting documents and information requested by BCBSTX – all of which *Plaintiffs previously agreed to produce months ago in response to discovery*. After stringing BCBSTX along with assurances that documents and information were forthcoming, Plaintiffs, for the first time at the eleventh hour, asserted that it would be disproportional to the needs of the case and unduly burdensome for them to keep their prior commitment and to produce basic documents and information regarding their claims. Plaintiffs clearly must provide information about the factual and legal bases for seeking millions of dollars from BCBSTX and produce supporting documents. Moreover, they waived these newly minted objections of undue burden and disproportionality by failing to raise them in their discovery responses. Simply put, Plaintiffs cannot shirk their discovery obligations at the eleventh hour and thereby deprive BCBSTX of information required to prepare its defense.

The Court should order Plaintiffs to identify the factual and legal bases for their Claims and produce all of the documents that remain outstanding, and grant BCBSTX its attorneys' fees incurred in bringing this Motion. If Plaintiffs do not produce the information and documents sought, the Court should preclude Plaintiffs from relying on any information and documents they have not produced or offer any testimony regarding the same. To rule otherwise would prejudice

BCBSTX and place it at an enormous and unfair disadvantage in defending itself.

BCBSTX's reply also asserts that the Court should preclude Plaintiffs from using or testifying about documents and information not produced in discovery in their prosecution of this case, where

> Federal Rule of Civil Procedure 37 provides that if a party "fails to obey an order to provide or permit discovery, including an order under [Rule] 26(f), 35, or 37(a), the court where the action is pending may issue further just orders," which "may include ... (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii). A violation of a specific discovery order is not necessary for the imposition of sanctions under Rule 37(b)(2). Jyue Hwa Fu v. Yeh Chin Chin, No. 3:18-CV-2066-N-BN, 2020 WL 7049161, at *4-5 (N.D. Tex. Oct. 23, 2020), report and recommendation adopted, No. 3:18-CV-2066-N-BN, 2020 WL 7047053 (N.D. Tex. Dec. 1, 2020).
>
> This Court has precluded litigants from relying on documents not produced in response to discovery when such a failure will cause prejudice to the other party. Jyue Hwa Fu, 2020 WL 7049161, at *5 (precluding defendant from relying on relevant evidence at summary judgment because defendant's "complete failure to provide relevant documents caused ... [the other party] prejudice, and allowing ... [defendant] to submit the documents would allow him to circumvent the discovery process without facing consequences[ ]").
>
> Here, Plaintiffs have failed to provide essential, basic and relevant information to BCBSTX – namely, the identity of the Claims at issue, the factual and legal bases for Plaintiffs' assertion they are owed additional payments for those Claims, and the underlying documents, including the medical records, for those Claims. While Plaintiffs now claim that many of these documents have been produced, they do not identify the documents or their Bates numbers – because they have not in fact produced them. If Plaintiffs possess the documents and information BCBSTX seeks, and fail to produce them, despite not having objected to BCBSTX's discovery requests, Plaintiffs should not be allowed to rely on such documents or information in support of their case nor offer any testimony regarding the same. BCBSTX would suffer tremendous prejudice and be at an enormous disadvantage in defending itself if Plaintiffs were allowed to sandbag BCBSTX with evidence or testimony at summary judgment or trial

-10-

based on documents of information they failed to produce. See id. at *5 (finding that party moving for summary judgment was prejudiced by other party's failure to produce relevant documents because it lacked a complete record when moving for summary judgment). Accordingly, the Court should preclude Plaintiffs from relying on any documents or information they have not produced to BCBSTX in support of their case and should not allow Plaintiffs to offer any testimony regarding the same. Id. (granting request to preclude offending party from using documents not produced in discovery).

## Legal Standards

The Court has previously laid out standards that govern a Federal Rule of Civil Procedure 37(a) motion to compel as to Federal Rule of Civil Procedure 34 requests for production and Federal Rule of Civil Procedure 33 interrogatories, and those standards are incorporated, but will not be repeated, here. *See Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 573-86 (N.D. Tex. 2018).

## Analysis

I.   <u>**RFP, Set One, No. 6 and Rog, Set One, No. 2(a) & 2(c) to LWCIT**</u>

RFP, Set One, No. 6, requests:

A data export from your billing or other electronic systems in Excel (and, if not capable of being exported in Excel format, then in Access or comma-delimited format) sufficient to show the following for each of the Claims [defined as any medical claim or invoice submitted by Plaintiffs to BCBSTX for payment] identified in response to Interrogatory No. 1: Member's last name, Member's first name, date of birth, member ID number, group ID number, Claim Number, date of service, Claim's CPT Code(s), Claim's HCPCS Code(s), billed charge(s), date the Claim was submitted to BCBSTX, amount of payment received from Member, date of receipt of payment from Member, amount of payment received from BCBSTX, date of receipt of payment from BCBSTX, amount(s) of any subsequent payment(s) received from BCBSTX, and date(s) of receipt of any such subsequent payment(s) from BCBSTX.

-11-

ROG, Set One, No. 2 (a) and (c) asks, in pertinent part:

For each Claim in your answer to Interrogatory No. 1, identify:
   a. the amount you allege BCBSTX was required to pay you, in addition to any amounts it has previously allowed for each Claim; …
   c. the factual and legal basis for your claim to be entitled to any amount identified in response to subsection a above[.]

BCBSTX explains:

The Excel exports (or spreadsheets) Plaintiffs have produced in response to this Request are deficient because they fail to identify the Claims at issue – specifically, the dates of service in dispute for each patient – as well as the nature of the dispute. Mainly, the Excel exports list thousands of dates of services with various codes beyond CPT Code 97140 and HCPCS Code S8950 that may or may not be at issue in this litigation. Hardy Decl., ¶¶ 7-8, 27-31. In informal discussions, LWCIT had represented to BCBSTX that the only Claims it is putting at issue in this lawsuit are those with CPT Code 97140 and HCPCS Code S8950. Id., ¶ 19. Yet, LWCIT has refused to explain why its spreadsheets include dates of services with various other codes. Id., ¶ 21. LWCCA likewise has yet to articulate what CPT and HCPCS Codes it is putting at issue. Id., ¶ 27. Further, both LWCIT and LWCCA have yet to produce all fields requested in RFP, Set One, No. 6, including, but not limited to, any payments received from BCBSTX subsequent to the original adjudication of a Claim.
   ….
   To date, Plaintiffs have only provided a vague and generic answer asserting that Plaintiffs are entitled to additional payments because, among other things, BCBSTX purportedly placed Plaintiffs in pre-payment review for certain unidentified Claims, wrongly recouped money for other unidentified Claims, and/or "bundled" some other unidentified Claims. This answer is nonresponsive, does not identify specific factual and legal theories of liability or recovery, and does not identify which individual Claims are impacted by each such theory of liability or recovery, and the additional amounts Plaintiffs contend BCBSTX is purportedly required to pay Plaintiffs for each Claim. Hardy Decl., Exs. C-1, C-2. However, pursuant to ROG, Set One, No. 2(a) and (c) – to which Plaintiffs did not object – Plaintiffs must provide a response for each Claim it contends to be at issue (i.e., identified in ROG, Set One, No. 1). Given Plaintiffs' complete failure to identify the Claims at issue in this litigation, the factual and legal

-12-

bases that purportedly entitle LWCIT and LWCCA to millions of dollars in additional payments, and the additional payment per Claim Plaintiffs contend they are entitled to receive, BCBSTX has no means to understand what Claims are at issue in this litigation and why Plaintiffs contend BCBSTX underpaid for specific dates of service for those Claims. Only Plaintiffs can provide this information to BCBSTX. Without this information, BCBSTX literally has to guess which of the thousands of dates of service for the multitude of patients Plaintiffs have included in their spreadsheets are at issue. Moreover, without knowing the factual and legal basis supporting each Claim, BCBSTX has no way of knowing what it purportedly did or failed to do in breach of its contracts with Plaintiffs with respect to any individual Claim.

Accordingly, the Court should order Plaintiffs to produce all requested information for each Claim, in response to RFP, Set One, No. 6, and ROG, Set One, No. 2.

LWCIT responds that

[t]his request is not proportional to the needs of this case because Defendant is already in possession of sufficient information to identify for itself the nature of each claim, and requiring LWCIT to re-review and summarize thousands of claims would be overly burdensome. Contrary to Defendant's assertion, LWCIT has already produced, through discovery in this suit and the prepayment audit, the dates of service for each patient, as well as the following for each patient claim:
   • Patient name
   • Description of services provided
   • Related CPT code (universal codes known to Defendant)
   • Billed charges
   • Provider identification
*See* Exhibit 1. LWCIT has also produced medical records for all claims. *Id.* Thus, Defendant is already in possession of sufficient information to address Plaintiffs' claims. Defendant complains that LWCIT has failed to identify the specific nature of each dispute. But doing so would require LWCIT to comb through thousands of claim lines submitted for reimbursement over several years; each patient could have several dates of treatment weekly for weeks or months, a claim form must be submitted for each date of treatment, each date of treatment may last several hours and involve multiple services, and each service is represented by a different CPT code and there may be multiple claim lines on each claim form. It would take at least three months for Ryan Chuston (sole owner of LWCIT) or his one administrative employee, working full time, to specifically identify the

nature of the dispute for each individual patient. See Exhibit 1. ("I estimate that it would take one person eight hours per day – 40 hours per work week – for 12 weeks. That is essentially a full-time job for the next three months.").

Alternatively, LWCIT requests that the Court permit LWCIT to provide the information requested for a representative sample of claims.

BCBSTX replies that LWCIT waived any objections:

Plaintiffs agreed without objection to both identify the Claims at issue and the legal and factual basis for their allegation that they are owed damages as to each Claim in response to RFP Set One, No. 6, and ROG, Set One, No. 2. ECF No. 41, pp. 26-27, 32-33, 39, 47. Plaintiffs cannot object now, for the first time, in their Opposition that it is unduly burdensome and disproportionate to the needs of the case to provide this information. Failure to timely object to discovery results in waiver of the objection. …. Courts routinely find objections waived when not timely raised and, accordingly, order the production of documents and information. ….

Plaintiffs have no good cause for their failure to timely object. They now claim for the first time that it would take them months to identify the factual and legal bases for each of the Claims they have put at issue. But Plaintiffs presumably knew this when they served their responses to BCBSTX's discovery and said nothing. It also appears that Plaintiffs did nothing after being served with BCBSTX's requests in August 2020 until now to attempt to collect and produce the requested information and documents. Indeed, Plaintiffs do not offer any reason why they waited until now – after discovery has closed, and only after BCBSTX was forced to file this Motion to Compel – to raise these issues for the first time. *See* ECF No. 44-1, 44-2.

Even if Plaintiffs had asserted timely objections, their objections cannot overcome BCBSTX's need for the information. Notably, and as an initial matter, Plaintiffs have refused to even confirm either in discovery or in their Opposition which of the thousands of claims they list in their spreadsheets constitute the Claims at issue. See ECF 44 (never identifying the CPT Codes at issue). [Plaintiffs' voluminous spreadsheets list many CPT codes that may or may not be at issue. As explained in the Memorandum and not disputed by Plaintiffs, in informal discussions, LWCIT represented to BCBSTX that the only Claims it is putting at issue are those with CPT Code 97140 and HCPCS Code S8950. ECF No. 40, p. 9. Yet, LWCIT has refused to explain why its spreadsheets include dates of service that do not even

-14-

include those codes. *Id.* LWCCA likewise has yet to articulate which CPT/HCPCS codes on its Claims it is putting at issue or why. *Id.* In their Opposition, Plaintiffs did not dispute or respond to this and do not mention, even in passing, the CPT/HCPCS codes they contend were wrongfully denied or underpaid. *See*, ECF No. 44. As such, their spreadsheets are unhelpful and incomplete, as Plaintiffs admit. *Id.*, p. 8 (admitting that LWCCA's spreadsheets include most, but not all of the information.). The critical information they omit is among the information BCBSTX seeks by its Motion.] Without this basic information, BCBSTX cannot even be sure what claims to defend.

Moreover, and importantly, Plaintiffs do not claim that there is a one-size-fits-all explanation for why Plaintiffs are entitled to more money that applies to all Claims, effectively conceding that they are alleging different theories of breach with respect to different Claims. As Plaintiffs themselves admit, they have submitted "thousands of claim lines ... for reimbursement over several years," and each patient "could have several dates of treatment weekly for weeks or months;" "each date of treatment may ... involve multiple services" and "each service is represented by a different CPT code." ECF No. 44, p. 6 (emphasis in original); p. 8-9 (also explaining that LWCCA submitted thousands of claims for reimbursement). It is precisely because Plaintiffs have submitted thousands of claims, each involving different services and CPT/HCPCS codes, that only Plaintiffs can identify both the Claims and the reasons they assert they are owed more money for each Claim – only they possess this information. If Plaintiffs cannot explain what it is about BCBSTX's processing of a Claim that they are disputing, BCBSTX is left to guess what is in dispute and why, to the detriment of its ability to defend itself.

Plaintiffs cannot avoid their discovery obligations merely by asserting that BCBSTX purportedly placed them on prepayment review. Prepayment review means just that – that BCBSTX reviewed a claim and its associated medical records prior to processing it, resulting either in a denial or payment of the claim. Yet, Plaintiffs have not even identified which of the claims that went through this process and that are listed in their voluminous spreadsheets, which were paid or denied, are Claims at issue here and why BCBSTX's resolution of those claims was somehow incorrect. The dodge in Plaintiffs' Opposition is thus apparent: pointing out that BCBSTX reviewed many claims before Plaintiffs filed suit does not at all explain why they contend additional benefits are payable on any of them – a point on which they of course bear the ultimate burden of production and persuasion in their case in the first place.

-15-

It is also no response to brush off discovery in the lawsuit by asserting that all of the information requested by RFP, Set One, No. 6 and ROG, Set Two, No. 2 (a) and (c), was provided prior to the litigation during the "pre-payment audit." ECF No. 44, p. 5, 8. Even assuming that were true, Plaintiffs submitted thousands of claims to BCBSTX over many years. BCBSTX should not be forced to blindly wade through all of those records when Plaintiffs refuse to tell BCBSTX which of the claims they submitted are at issue and why.

Plaintiffs' belated and hollow offer to produce documents and information relating to a "representative sample" of the Claims at issue is a non-starter, particularly at this stage of the litigation. Initially, sampling is a means to test and, in the appropriate case, extrapolate and present underlying facts; it is not a substitute for Plaintiffs articulating what they are challenging and why, let alone a fishing expedition in lieu of having any presently identifiable grounds after the close of discovery and almost two years into the case. Moreover, Plaintiffs do not offer a concrete proposal or any level of detail as to how a statistically sound sampling process would work, or even what it would sample the Claims for. Nor would such a conversation be possible without much of the discovery that has been requested, such as the types of disputes or issues that are being challenged. This eleventh hour, detail-free proposal is emblematic of Plaintiffs' overall approach to Discovery – hide the ball and then attempt to force BCBSTX to do the work of figuring out why Plaintiffs are suing.

Accordingly, the Court should compel Plaintiffs to confirm which of the thousands of claims they list in their spreadsheets are Claims at issue here and identify the factual and legal bases that purportedly entitle them to additional payments for the Claims they have at issue.

On this record, LWCIT waived the objections on which it now relies by failing to raise them before responding to the MTC.

Further, for the reasons that BCBSTX persuasively explains in its reply, this discovery – although extensive – is proportional to the needs of the case considering the parties' relative access to this information and its importance to LWCIT's claims and BCBSTX's ability to defend against the claims.

For the reasons that BCBSTX explains in its reply, the Court GRANTS the MTC as to RFP, Set One, No. 6 and Rog, Set One, No. 2(a) & 2(c) to LWCIT and ORDERS LWCIT to, by **April 5, 2021**, serve an amended response to, and, produce all previously unproduced, responsive documents in LWCIT's possession, custody, or control in response to, RFP, Set One, No. 6 in compliance with Federal Rule of Civil Procedure 34(b)'s requirements and serve amended answers to Rog, Set One, No. 2(a) & 2(c) that, in compliance with Federal Rule of Civil Procedure 33's requirements, provide the responsive, relevant facts reasonably available to it.

## II.   <u>RFP, Set One, No. 1 to LWCIT</u>

RFP, Set One, No. 1, requests:

> All Documents and Communications related to the Claims identified in your answer to Interrogatory No. 1, including, but not limited to, patient intake records, patient insurance cards, assignments of benefits, medical records, benefit verification records, preauthorization/precertification records, call notes or logs, call recordings, Claim forms, UB forms, remittance reports, remittance notices, transaction detail records, collection notes or collection records, and all payment and account records.

BCBSTX explains:

> To date, Plaintiffs' production in response to Request No. 1 is woefully incomplete. Plaintiff LWCIT has merely provided medical records relating to four patients, and even those productions have been partial and incomplete. Hardy Decl., ¶ 20. LWCCA has repeatedly promised that it would produce medical records, but it has not done so. *Id.*, ¶¶ 12-13, 14-15, 29-30.
>
> Because Plaintiffs' entire case rests on showing that it provided the services billed on the Claims and that the underlying medical records justify the CPT and HCPCS Codes billed for those services, Request No. 1 necessarily includes medical records for all of the BCBSTX members to whom Plaintiffs allegedly provided the services for which they now seek additional payments. These medical records

are critical to BCBSTX's defense, as they will permit BCBSTX to verify whether Plaintiffs actually provided the services that support their Claims and, if so, whether they correctly billed BCBSTX for such services. It would be patently unfair to allow Plaintiffs to pursue claims against BCBSTX for purported breach of contract for failure to pay for services, when Plaintiffs have failed and refused to produce the very records that could verify whether they actually provided those services and that arguably support the CPT and HCPCS Codes for which Plaintiffs claim BCBSTX should pay. This is especially true when BCBSTX has already discovered, in the limited productions Plaintiffs have made to date, medical records for dates of service purportedly approved by Dr. Share, when Dr. Share was no longer associated with LWCIT.

The Court therefore should compel Plaintiffs to produce medical records for every Claim for which they seek additional payment.

LWCIT responds that it already produced responsive records months ago.

And BCBSTX replies that

LWCIT's contention that it has produced the medical records for "all claims" in response to RFP, Set One, No. 1, ECF No. 44, p. 6, does not withstand scrutiny. LWCCA did produce boxes of disorganized and scattered records for inspection, as it claims, but after BCBSTX spent significant time and resources copying and going through the maze of pages in those boxes, it discovered they contained complete medical records for only four patients who appear on LWCIT's spreadsheets. ECF No. 41, pp. 5, 71-76. When BCBSTX wrote to LWCIT on November 18, 2020, to request that it produce the other patients' records, LWCIT never responded, ECF No. 41, pp 71-76, 5, maybe because LWCIT cannot even make sense of its disorganized, truncated and scattered records it dumped in boxes for inspection. If LWCIT's silence can be construed as an admission that only those four patients' Claims are at issue in the lawsuit, then that suggests LWCIT also would not oppose being precluded from offering any evidence on any Claims aside from the Claims for those four patients. Otherwise, LWCIT clearly has not produced the medical records for "all claims" it has put at issue, even though it agreed to do so in its discovery responses.

For the reasons that BCBSTX persuasively explains in its reply, the Court GRANTS the MTC as to RFP, Set One, No. 1 and ORDERS LWCIT to, by **April 5, 2021**, serve an amended response to, and, produce all previously unproduced, responsive documents in LWCIT's possession, custody, or control in response to, RFP, Set One, No. 1 in compliance with Federal Rule of Civil Procedure 34(b)'s requirements.

## III.   <u>Rog, Set One, No. 2(d) to LWCIT</u>

Interrogatory No. 2(d) asks, as BCBSTX explains, "that Plaintiffs identify each provision in their respective contracts with BCBSTX that supports Plaintiffs' allegation that they are entitled to additional amounts for each Claim": "For each Claim in your answer to Interrogatory No. 1, identify ... each provision in the LWCCA Agreement or LWCIT Agreement that supports your claim to any amount identified in response to subsection [2(a)] above."

BCBSTX explains:

> Plaintiffs did not object to this Interrogatory, but provided an overly generic response that BCBSTX purportedly violated Article 1, Section 1, and Article 2, Section 2, of their respective contracts. Hardy Decl., Exs. C-1, C-2. Such Sections, however, do not exist. *See* ECF No., 1-1, p. 14 & 88 of 98. And, even when one reviews those Articles in their entirety, it is not clear what sub-part of each of those Articles Plaintiffs claim entitle them to additional reimbursement for each Claim. Plaintiffs' response to this Interrogatory is crucial in this breach of contract action, in which, Plaintiffs seek to hold BCBSTX liable for millions of dollars. Plaintiffs should not be allowed to hide the ball and fail to identify the sections of the contracts they claim entitle them to additional relief for each Claim. Accordingly, the Court

should compel Plaintiffs to provide an amended response to ROG, Set One, No. 2(d).

LWCIT responded that it will serve its amended answer on Defendant on January 28, 2021.

BCBSTX does not address this interrogatory in its reply.

But the Court is persuaded that, if it has not already done so, LWCIT is required to fully answer this appropriate contention interrogatory and ORDERS LWCIT to, if it has not already done so, by **March 19, 2021**, serve an amended answer to Rog, Set One, No. 2(d) that, in compliance with Federal Rule of Civil Procedure 33's requirements, provides the responsive, relevant information reasonably available to it.

## IV.   <u>RFP, Set One, Nos. 1-5, 9, 11-12, and 14 to LWCIT</u>

BCBSTX also asserts that LWCIT's existing production is deficient with respect to BCBSTX's requests seeking all documents identified or described in their responses to BCBSTX's First Set of Interrogatories (RFP, Set One, No. 11); all documents Plaintiffs anticipate using at trial in this litigation (RFP, Set One, No. 12); and all documents that relate to each category of damages Plaintiffs seek in this litigation (RFP, Set One, No. 14). BCBSTX notes that LWCIT did not object to any of these requests; that, because LWCIT has yet to identify the Claims that are at issue and the nature of the dispute as to each such Claim, its production of documents in response to RFP Nos. 11, 12, and 14 necessarily remains outstanding;

and that the same is true for RFPs, Set One, Nos. 1-5 and 9, which also seek documents or communications related to the Claims.

According to BCBSTX, "Plaintiffs do not have a basis for withholding documents or failing to complete their production"; "[t]hey should know what Claims they are putting at issue and should be able to produce all requested documents and communications that relate to such Claims"; and the Court should compel LWCIT to complete its production and produce all remaining documents responsive to BCBSTX's RFP, Set One.

LWCIT responds that:

- it has already produced documents responsive to No. 1. See Exhibit 1.

- As for Nos. 2 and 3, there is no "document"; LWCIT's charges were set when it began around 1999 and are entered within its software. The charges for each service are included on each claim form submitted to Defendant, which Defendant is already in possession of.

- As for No. 5, there are no responsive documents/information that have not already been produced other than those addressed in Exhibit 1.

- As for No. 9, all responsive documents have already been produced.

- As for No 11 and 12, there are no responsive documents that have not been produced.

- As for No. 14, there are no responsive documents that have not been produced except those addressed in Exhibit 1 and penalties and

interest which are not calculable at this time as the clock is still running.

BCBSTX replies that LWCIT's response as to RFP Nos. 11-12 and 14 is incorrect where "Plaintiffs agreed to make the 'claim files' containing the information responsive to RFPs, Set One, Nos. 11, 12, 14, available for review and copying, ECF No. 41, pp. 40-41, 48-49, but LWCCA admits it has not produced those files, and LWCIT's production only contained complete files for four patients. Therefore, Plaintiffs' claim that they have produced all responsive documents is false. The same is true for RFPs, Set One, Nos. 2-5, which seek documents or communications related to the Claims. ECF No. 41, pp. 38-39, 46-47."

The Court has already addressed RFP No. 1. BCBSTX has not adequately explained why and how it believes that LWCIT's document production in response to RFP Nos. 2-5 and 9 are deficient. And BCBSTX's complaints regarding RFP Nos. 11, 12, and 14 appear to largely overlap with their more specific concerns addressed in connection with the requests on which the Court has already granted the MTC. For these reasons, the Court DENIES the MTC as to RFP, Set One, Nos. 1-5, 9, 11-12, and 14 to LWCIT.

## V.    RFP, Set Two, and Rog, Set Two, to LWCIT

BCBSTX asserts that the Court should Compel LWCIT to answer ROG, Set Two, and produce documents responsive to RFP, Set Two, where "BCBSTX served LWCIT with its second set of interrogatories and second set of requests for production on November 18, 2020"; "LWCIT failed to respond (let alone object)

within 30 days"; "'[a]s a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived"; "LWCIT has made clear that no good cause excuses LWCIT's failure to respond to BCBSTX's second set of interrogatories and second set of requests for production"; and "LWCIT impeded BCBSTX's defense of this case by representing that it would substantively respond to BCBSTX's second set of discovery requests by December 22, 2020, only to let that deadline pass without doing so."

LWCIT responded that it will respond to these RFPs and interrogatories by January 29, 2021.

> BCBSTX replies that
>
> LWCIT's "responses" to RFPs, Set Two, which LWCIT also only served after the Motion to Compel had been filed, are evasive and non-responsive. Specifically, for RFP, Set Two, No. 16, which asks for "[a]ll Documents and Communications reflecting or relating to the Government Settlement," LWCIT responded without objection: "The final document has already been produced by LWCCA." Hardy Decl. Ex. B, RFP, Set Two, No. 16. To the extent that the "final document" refers to the Government Settlement itself, LWCIT's response is incomplete because RFP No. 16 also asks for "documents" and "communications" relating to it. *See id.* These documents and communications remain outstanding.
>
> LWCIT's documents in response to RFP, Set Two, Nos. 18 and 22, which respectively ask for documents sufficient to show the ownership of LWCIT and the tax status of LWCIT, are also outstanding. *See* Hardy Decl., Ex. B, RFPs, Set Two, Nos. 18 and 22. That the documents showing LWCIT's ownership may be publicly available does not relieve LWCIT from the obligation of producing those documents. *See cf. U.S. ex rel. Mallavarapu v. Acadiana Cardiology, LLC*, No. 4-cv-732, 2012 WL 369896, at *5 (W.D. La. Feb. 3, 2012). Further, LWCIT's written response that LWCIT is in "arrears with tax payments" is insufficient. *See* Hardy Decl., Ex. B, RFPs, Set Two, No. 22. RFP, Set Two, No. 22 asks for the documents that show

LWCIT's tax status and/or support the statement that LWCIT is purportedly in arrears. LWCIT has not produced [these] documents.

For the reasons that BCBSTX persuasively explains in its reply, the Court GRANTS in part the MTC as to RFP, Set Two, and Rog, Set Two, to LWCCA and ORDERS LWCIT to, by **April 5, 2021**, serve amended responses to, and, produce all previously unproduced, responsive documents in LWCIT's possession, custody, or control in response to, RFP, Set Two, Nos. 1, 18, and 22 in compliance with Federal Rule of Civil Procedure 34(b)'s requirements.

## VI.   RFP, Set One, No. 6 and Rog, Set One, No. 2(a) & 2(c) to LWCCA

RFP, Set One, No. 6, requests:

A data export from your billing or other electronic systems in Excel (and, if not capable of being exported in Excel format, then in Access or comma-delimited format) sufficient to show the following for each of the Claims [defined as any medical claim or invoice submitted by Plaintiffs to BCBSTX for payment] identified in response to Interrogatory No. 1: Member's last name, Member's first name, date of birth, member ID number, group ID number, Claim Number, date of service, Claim's CPT Code(s), Claim's HCPCS Code(s), billed charge(s), date the Claim was submitted to BCBSTX, amount of payment received from Member, date of receipt of payment from Member, amount of payment received from BCBSTX, date of receipt of payment from BCBSTX, amount(s) of any subsequent payment(s) received from BCBSTX, and date(s) of receipt of any such subsequent payment(s) from BCBSTX.

ROG, Set One, No. 2 (a) and (c) asks, in pertinent part:

For each Claim in your answer to Interrogatory No. 1, identify:
      a. the amount you allege BCBSTX was required to pay you, in addition to any amounts it has previously allowed for each Claim; …
      c. the factual and legal basis for your claim to be entitled to any amount identified in response to subsection a above[.]

BCBSTX explains:

The Excel exports (or spreadsheets) Plaintiffs have produced in response to this Request are deficient because they fail to identify the Claims at issue – specifically, the dates of service in dispute for each patient – as well as the nature of the dispute. Mainly, the Excel exports list thousands of dates of services with various codes beyond CPT Code 97140 and HCPCS Code S8950 that may or may not be at issue in this litigation. Hardy Decl., ¶¶ 7-8, 27-31. In informal discussions, LWCIT had represented to BCBSTX that the only Claims it is putting at issue in this lawsuit are those with CPT Code 97140 and HCPCS Code S8950. Id., ¶ 19. Yet, LWCIT has refused to explain why its spreadsheets include dates of services with various other codes. Id., ¶ 21. LWCCA likewise has yet to articulate what CPT and HCPCS Codes it is putting at issue. Id., ¶ 27. Further, both LWCIT and LWCCA have yet to produce all fields requested in RFP, Set One, No. 6, including, but not limited to, any payments received from BCBSTX subsequent to the original adjudication of a Claim.

....

To date, Plaintiffs have only provided a vague and generic answer asserting that Plaintiffs are entitled to additional payments because, among other things, BCBSTX purportedly placed Plaintiffs in pre-payment review for certain unidentified Claims, wrongly recouped money for other unidentified Claims, and/or "bundled" some other unidentified Claims. This answer is nonresponsive, does not identify specific factual and legal theories of liability or recovery, and does not identify which individual Claims are impacted by each such theory of liability or recovery, and the additional amounts Plaintiffs contend BCBSTX is purportedly required to pay Plaintiffs for each Claim. Hardy Decl., Exs. C-1, C-2. However, pursuant to ROG, Set One, No. 2(a) and (c) – to which Plaintiffs did not object – Plaintiffs must provide a response for each Claim it contends to be at issue (i.e., identified in ROG, Set One, No. 1). Given Plaintiffs' complete failure to identify the Claims at issue in this litigation, the factual and legal bases that purportedly entitle LWCIT and LWCCA to millions of dollars in additional payments, and the additional payment per Claim Plaintiffs contend they are entitled to receive, BCBSTX has no means to understand what Claims are at issue in this litigation and why Plaintiffs contend BCBSTX underpaid for specific dates of service for those Claims. Only Plaintiffs can provide this information to BCBSTX. Without this information, BCBSTX literally has to guess which of the thousands of dates of service for the multitude of patients Plaintiffs have included in their spreadsheets are at issue. Moreover, without

-25-

knowing the factual and legal basis supporting each Claim, BCBSTX has no way of knowing what it purportedly did or failed to do in breach of its contracts with Plaintiffs with respect to any individual Claim.

Accordingly, the Court should order Plaintiffs to produce all requested information for each Claim, in response to RFP, Set One, No. 6, and ROG, Set One, No. 2.

LWCCA responds that

[t]his request is not proportional to the needs of this case because Defendant is already in possession of sufficient information to identify for itself the nature of each claim. Like LWCIT, LWCCA has already produced, through discovery in this suit and the pre-payment audit, the dates of service for each patient, as well as the following for each patient claim:
  • Patient name
  • Description of services provided
  • Related CPT code (universal codes known to Defendant)
  • Billed charges
  • Provider identification
Defendant complains that LWCCA has failed to identify the specific nature of each dispute. But in order to provide the factual and legal basis that gives rise to each Claim, LWCCA would need to review roughly a total of 69,845 line items, ERA's, denial notices, and other pertinent correspondence, all of which, again, Defendant was in possession of before this litigation began.See Exhibit 2, Declaration of Shanna McKinley. LWCCA does not have the resources or staff to timely complete such a task; While Defendant is a billion-dollar company with 16 million members, LWCCA has only three administrative employees (non-clinical staff) with the skill set and access to review and compile the requested information. *Id.* Accordingly, it would take LWCCA up to a year to provide specific descriptions for each patient.

Alternatively, LWCCA requests that the Court permit it to provide the information requested for a representative sample of claims.

BCBSTX replies that LWCCA waived any objections:

Plaintiffs agreed without objection to both identify the Claims at issue and the legal and factual basis for their allegation that they are owed damages as to each Claim in response to RFP Set One, No. 6, and ROG, Set One, No. 2. ECF No. 41, pp. 26-27, 32-33, 39, 47. Plaintiffs

-26-

cannot object now, for the first time, in their Opposition that it is unduly burdensome and disproportionate to the needs of the case to provide this information. Failure to timely object to discovery results in waiver of the objection. …. Courts routinely find objections waived when not timely raised and, accordingly, order the production of documents and information. ….

Plaintiffs have no good cause for their failure to timely object. They now claim for the first time that it would take them months to identify the factual and legal bases for each of the Claims they have put at issue. [Plaintiffs' voluminous spreadsheets list many CPT codes that may or may not be at issue. As explained in the Memorandum and not disputed by Plaintiffs, in informal discussions, LWCIT represented to BCBSTX that the only Claims it is putting at issue are those with CPT Code 97140 and HCPCS Code S8950. ECF No. 40, p. 9. Yet, LWCIT has refused to explain why its spreadsheets include dates of service that do not even include those codes. Id. LWCCA likewise has yet to articulate which CPT/HCPCS codes on its Claims it is putting at issue or why. Id. In their Opposition, Plaintiffs did not dispute or respond to this and do not mention, even in passing, the CPT/HCPCS codes they contend were wrongfully denied or underpaid. See, ECF No. 44. As such, their spreadsheets are unhelpful and incomplete, as Plaintiffs admit. Id., p. 8 (admitting that LWCCA's spreadsheets include most, but not all of the information.). The critical information they omit is among the information BCBSTX seeks by its Motion.] But Plaintiffs presumably knew this when they served their responses to BCBSTX's discovery and said nothing. It also appears that Plaintiffs did nothing after being served with BCBSTX's requests in August 2020 until now to attempt to collect and produce the requested information and documents. Indeed, Plaintiffs do not offer any reason why they waited until now – after discovery has closed, and only after BCBSTX was forced to file this Motion to Compel – to raise these issues for the first time. See ECF No. 44-1, 44-2.

Even if Plaintiffs had asserted timely objections, their objections cannot overcome BCBSTX's need for the information. Notably, and as an initial matter, Plaintiffs have refused to even confirm either in discovery or in their Opposition which of the thousands of claims they list in their spreadsheets constitute the Claims at issue.[2] See ECF 44 (never identifying the CPT Codes at issue). Without this basic information, BCBSTX cannot even be sure what claims to defend.

Moreover, and importantly, Plaintiffs do not claim that there is a one-size-fits-all explanation for why Plaintiffs are entitled to more money that applies to all Claims, effectively conceding that they are alleging different theories of breach with respect to different Claims.

As Plaintiffs themselves admit, they have submitted "thousands of claim lines . . for reimbursement over several years," and each patient "could have several dates of treatment weekly for weeks or months;" "each date of treatment may ... involve multiple services" and "each service is represented by a different CPT code." ECF No. 44, p. 6 (emphasis in original); p. 8-9 (also explaining that LWCCA submitted thousands of claims for reimbursement). It is precisely because Plaintiffs have submitted thousands of claims, each involving different services and CPT/HCPCS codes, that only Plaintiffs can identify both the Claims and the reasons they assert they are owed more money for each Claim – only they possess this information. If Plaintiffs cannot explain what it is about BCBSTX's processing of a Claim that they are disputing, BCBSTX is left to guess what is in dispute and why, to the detriment of its ability to defend itself.

Plaintiffs cannot avoid their discovery obligations merely by asserting that BCBSTX purportedly placed them on prepayment review. Prepayment review means just that – that BCBSTX reviewed a claim and its associated medical records prior to processing it, resulting either in a denial or payment of the claim. Yet, Plaintiffs have not even identified which of the claims that went through this process and that are listed in their voluminous spreadsheets, which were paid or denied, are Claims at issue here and why BCBSTX's resolution of those claims was somehow incorrect. The dodge in Plaintiffs' Opposition is thus apparent: pointing out that BCBSTX reviewed many claims before Plaintiffs filed suit does not at all explain why they contend additional benefits are payable on any of them – a point on which they of course bear the ultimate burden of production and persuasion in their case in the first place.

It is also no response to brush off discovery in the lawsuit by asserting that all of the information requested by RFP, Set One, No. 6 and ROG, Set Two, No. 2 (a) and (c), was provided prior to the litigation during the "pre-payment audit." ECF No. 44, p. 5, 8. Even assuming that were true, Plaintiffs submitted thousands of claims to BCBSTX over many years. BCBSTX should not be forced to blindly wade through all of those records when Plaintiffs refuse to tell BCBSTX which of the claims they submitted are at issue and why.

Plaintiffs' belated and hollow offer to produce documents and information relating to a "representative sample" of the Claims at issue is a non-starter, particularly at this stage of the litigation. Initially, sampling is a means to test and, in the appropriate case, extrapolate and present underlying facts; it is not a substitute for Plaintiffs articulating what they are challenging and why, let alone a fishing expedition in lieu of having any presently identifiable grounds

after the close of discovery and almost two years into the case. Moreover, Plaintiffs do not offer a concrete proposal or any level of detail as to how a statistically sound sampling process would work, or even what it would sample the Claims for. Nor would such a conversation be possible without much of the discovery that has been requested, such as the types of disputes or issues that are being challenged. This eleventh hour, detail-free proposal is emblematic of Plaintiffs' overall approach to Discovery – hide the ball and then attempt to force BCBSTX to do the work of figuring out why Plaintiffs are suing.

Accordingly, the Court should compel Plaintiffs to confirm which of the thousands of claims they list in their spreadsheets are Claims at issue here and identify the factual and legal bases that purportedly entitle them to additional payments for the Claims they have at issue.

On this record, LWCCA waived the objections on which it now relies by failing to raise them.

Further, for the reasons that BCBSTX persuasively explains in its reply, this discovery – although extensive – is proportional to the needs of the case considering the parties' relative access to this information and its importance to LWCCA's claims and BCBSTX's ability to defend against the claims.

For the reasons that BCBSTX explains in its reply, the Court GRANTS the MTC as to RFP, Set One, No. 6 and Rog, Set One, No. 2(a) & 2(c) to LWCCA and ORDERS LWCCA to, by **April 5, 2021**, serve an amended response to, and, produce all previously unproduced, responsive documents in LWCIT's possession, custody, or control in response to, RFP, Set One, No. 6 in compliance with Federal Rule of Civil Procedure 34(b)'s requirements and serve amended answers to Rog, Set One, No. 2(a) & 2(c) that, in compliance with Federal Rule of Civil Procedure 33's requirements, provide the responsive, relevant facts reasonably available to it.

## VII. <u>RFP, Set One, No. 1 to LWCCA</u>

RFP, Set One, No. 1, requests:

All Documents and Communications related to the Claims identified in your answer to Interrogatory No. 1, including, but not limited to, patient intake records, patient insurance cards, assignments of benefits, medical records, benefit verification records, preauthorization/precertification records, call notes or logs, call recordings, Claim forms, UB forms, remittance reports, remittance notices, transaction detail records, collection notes or collection records, and all payment and account records.

BCBSTX explains:

To date, Plaintiffs' production in response to Request No. 1 is woefully incomplete. Plaintiff LWCIT has merely provided medical records relating to four patients, and even those productions have been partial and incomplete. Hardy Decl., ¶ 20. LWCCA has repeatedly promised that it would produce medical records, but it has not done so. Id., ¶¶ 12-13, 14-15, 29-30.

Because Plaintiffs' entire case rests on showing that it provided the services billed on the Claims and that the underlying medical records justify the CPT and HCPCS Codes billed for those services, Request No. 1 necessarily includes medical records for all of the BCBSTX members to whom Plaintiffs allegedly provided the services for which they now seek additional payments. These medical records are critical to BCBSTX's defense, as they will permit BCBSTX to verify whether Plaintiffs actually provided the services that support their Claims and, if so, whether they correctly billed BCBSTX for such services. It would be patently unfair to allow Plaintiffs to pursue claims against BCBSTX for purported breach of contract for failure to pay for services, when Plaintiffs have failed and refused to produce the very records that could verify whether they actually provided those services and that arguably support the CPT and HCPCS Codes for which Plaintiffs claim BCBSTX should pay. This is especially true when BCBSTX has already discovered, in the limited productions Plaintiffs have made to date, medical records for dates of service purportedly approved by Dr. Share, when Dr. Share was no longer associated with LWCIT.

The Court therefore should compel Plaintiffs to produce medical records for every Claim for which they seek additional payment.

LWCCA responds that it "has produced spreadsheets identifying all claims which are the subject of this lawsuit" and that "[i]t would take a year or more for LWCCA to produce all of the information requested by Defendant," but, "[a]ternatively, LWCCA requests that the Court permit LWCCA to provide the information requested for a representative sample of claims."

BCBSTX replies that

LWCCA has also not been forthcoming with BCBSTX regarding the production of its medical records in response to RFP, Set One, No. 1. For one thing, LWCCA strung BCBSTX along for months with promises that it would produce its medical records – first, in paper, and then, electronically, ECF No. 41, pp. 56-60, 87, only to now claim for the first time that the records it had in hard copy were damaged by Hurricane Harvey in 2017. ECF No. 44-2, p. 3. LWCCA has no explanation for why it is just disclosing this information now, see ECF No. 44 and 44-2, after discovery closed more than a month ago and after BCBSTX was forced to file this Motion.

LWCCA has also waived its new, belatedly asserted objection that it would be unduly burdensome to produce the medical records it does have. ECF No. 44, p. 9; ECF No. 44-2, p. 3. LWCCA agreed to produce these records without objection in its discovery responses. ECF No. 41, p. 46. Its burden objection therefore is not timely. *Morris*, 2017 WL 10841356, at *2.

Moreover, LWCCA cannot satisfy its discovery obligations by making the entirety of its records available to BCBSTX and placing the burden on BCBSTX to comb through all of those records to find the ones that might relate to the Claims. *See* ECF No. 44-2, p. 3 (proposing to have a BCBSTX's representative access LWCCA's medical record and billing systems to search for the records it has requested). Such tactics are prohibited by the Federal Rules of Civil Procedure. *McKinney/Pearl Rest. P'ners, L.P. v. Metro. Life Ins. Co.*, 322 F.R.D. 235, 249 (N.D. Tex. 2016) (Federal Rule 34(b)(2)(i) "forbids 'dump truck' discovery tactics, where a party delivers voluminous and poorly organized documents to his adversary, who is forced to rummage through piles of paper in search of what is relevant.") (internal quotation marks and citation omitted); *ReedHycalog UK, Ltd. v. United Diamond Drilling Servs., Inc.*, No. 6:07 CV 251, 2008 WL 11348342, at *2 (E.D. Tex. Oct. 3, 2008) ("This Court does not endorse a method of

document production that merely gives the requesting party access to a 'document dump' with an instruction to 'go fish.'") (quoting *Residential Constr., LLC v. ACE Prop. & Cas. Ins. Co.*, No. 2:05-CV-1318, 2006 WL 1582122, at *2 (D. Nev. June 5, 2006)).

On this record, LWCCA waived the objections on which it now relies by failing to raise them.

Further, for the reasons that BCBSTX persuasively explains in its reply, this discovery – although extensive – is proportional to the needs of the case considering the parties' relative access to this information and its importance to LWCCA's claims and BCBSTX's ability to defend against the claims.

And the Court agrees with BCBSTX's assertion that LWCCA may not – consistent with Federal Rule of Civil Procedure 34(b)(2)(E)(i)'s requirements – only point BCBSTX to the entirety of its records and place the burden on BCBSTX to, without any organization or direction from LWCCA, comb through all of those records to find the ones that might relate to the Claims.

For the reasons that BCBSTX persuasively explains in its reply, the Court GRANTS the MTC as to RFP, Set One, No. 1 and ORDERS LWCCA to, by **April 5, 2021**, serve an amended response to, and, produce all previously unproduced, responsive documents in LWCCA's possession, custody, or control in response to, RFP, Set One, No. 1 in compliance with Federal Rule of Civil Procedure 34(b)'s requirements.

## VIII.   <u>Rog, Set One, No. 2(d) to LWCCA</u>

Interrogatory No. 2(d) asks, as BCBSTX explains, "that Plaintiffs identify each provision in their respective contracts with BCBSTX that supports Plaintiffs' allegation that they are entitled to additional amounts for each Claim": "For each Claim in your answer to Interrogatory No. 1, identify ... each provision in the LWCCA Agreement or LWCIT Agreement that supports your claim to any amount identified in response to subsection [2(a)] above."

BCBSTX explains:

> Plaintiffs did not object to this Interrogatory, but provided an overly generic response that BCBSTX purportedly violated Article 1, Section 1, and Article 2, Section 2, of their respective contracts. Hardy Decl., Exs. C-1, C-2. Such Sections, however, do not exist. See ECF No., 1-1, p. 14 & 88 of 98. And, even when one reviews those Articles in their entirety, it is not clear what sub-part of each of those Articles Plaintiffs claim entitle them to additional reimbursement for each Claim. Plaintiffs' response to this Interrogatory is crucial in this breach of contract action, in which, Plaintiffs seek to hold BCBSTX liable for millions of dollars. Plaintiffs should not be allowed to hide the ball and fail to identify the sections of the contracts they claim entitle them to additional relief for each Claim. Accordingly, the Court should compel Plaintiffs to provide an amended response to ROG, Set One, No. 2(d).

LWCCA responds that it will serve its amended answer on Defendant on January 28, 2021.

BCBSTX does not address this interrogatory in its reply.

But the Court is persuaded that, if it has not already done so, LWCCA is required to fully answer this appropriate contention interrogatory and ORDERS LWCCA to, if it has not already done so, by **March 19, 2021**, serve an amended

answer to Rog, Set One, No. 2(d) that, in compliance with Federal Rule of Civil Procedure 33's requirements, provides the responsive, relevant information reasonably available to it.

## IX.   RFP, Set One, Nos. 1-5, 9, 11-12, and 14 to LWCCA

BCBSTX also asserts that LWCCA's existing production is deficient with respect to BCBSTX's requests seeking all documents identified or described in their responses to BCBSTX's First Set of Interrogatories (RFP, Set One, No. 11); all documents Plaintiffs anticipate using at trial in this litigation (RFP, Set One, No. 12); and all documents that relate to each category of damages Plaintiffs seek in this litigation (RFP, Set One, No. 14). BCBSTX notes that LWCCA did not object to any of these requests; that, because LWCCA has yet to identify the Claims that are at issue and the nature of the dispute as to each such Claim, its production of documents in response to RFP Nos. 11, 12, and 14 necessarily remains outstanding; and that the same is true for RFPs, Set One, Nos. 1-5 and 9, which also seek documents or communications related to the Claims.

According to BCBSTX, "Plaintiffs do not have a basis for withholding documents or failing to complete their production"; "[t]hey should know what Claims they are putting at issue and should be able to produce all requested documents and communications that relate to such Claims"; and the Court should compel LWCCA to complete its production and produce all remaining documents responsive to BCBSTX's RFP, Set One.

LWCCA responds that:

- it has produced spreadsheets including most of the information requested for No. 1.

- As for Nos. 2 and 3, there is no "document". LWCCA's charges were set when it was initially formed and are entered within its software. The charges for each service are included on each claim form submitted to Defendant, which Defendant has.

- As for No. 5, LWCCA refers to Exhibit 2.

- As for No. 9, all responsive documents have already been produced.

- As for No 11 and 12, there are no responsive documents that have not been produced other than what is addressed in Exhibit 2.

- As for No. 14, there are no responsive documents that have not been produced except those addressed in Exhibit 2 and penalties and interest which are not calculable at this time as the clock is still running.

BCBSTX replies that LWCCA's response as to RFP Nos. 11-12 and 14 is incorrect where "Plaintiffs agreed to make the 'claim files' containing the information responsive to RFPs, Set One, Nos. 11, 12, 14, available for review and copying, ECF No. 41, pp. 40-41, 48-49, but LWCCA admits it has not produced those files, and LWCIT's production only contained complete files for four patients. Therefore, Plaintiffs' claim that they have produced all responsive documents is

false. The same is true for RFPs, Set One, Nos. 2-5, which seek documents or communications related to the Claims. ECF No. 41, pp. 38-39, 46-47."

The Court has already addressed RFP No. 1. BCBSTX has not adequately explained why and how it believes that LWCCA's document production in response to RFP Nos. 2-5 and 9 are deficient. And BCBSTX's complaints regarding RFP Nos. 11, 12, and 14 appear to largely overlap with their more specific concerns addressed in connection with the requests on which the Court has already granted the MTC. For these reasons, the Court DENIES the MTC as to RFP, Set One, Nos. 1-5, 9, 11-12, and 14 to LWCCA.

## X.     RFP, Set Two, and Rog, Set Two, to LWCCA

BCBSTX asserts that the Court should compel "LWCCA to produce … all documents requested in BCBSTX's RFP, Set Two, that it has already agreed to produce as well as the documents it has committed to produce in response to ROGs, Set Two, Nos. 8-9 and RFP, Set Two, No. 24" where "LWCCA has responded to BCBSTX's second set of interrogatories and second set of requests for production and agreed to produce documents in response to ROG, Set Two, Nos. 8-9 and RFP, Set Two, No. 24." According to BCBSTX, "LWCCA's production of the documents, however, remains outstanding despite its multiple promises that it will produce documents," and "LWCCA should not be allowed to delay its production of documents any further and, in the process, prejudice BCBSTX."

LWCCA responds that it has already produced documents responsive to Request for Production, Set Two, No. 24 and refers to Exhibit 2 for Interrogatories, Set Two, Nos. 8-9.

BCBSTX replies that "LWCCA's contention that it has already identified each natural person who provided the services billed in each Claim in its unverified response to ROG, Set Two, No. 8, and all licenses or other medical credentials for each such natural person in its unverified response to ROG, Set Two, No. 9, ECF No. 44, p. 9, is demonstrably false," where "LWCCA did not identify any information in response to those Interrogatories, but merely stated it would make its records available electronically" and where LWCCA has not done so. And, BCBSTX argues, "[w]hile LWCCA did assert boilerplate objections of undue burden and proportionality to ROG, Set Two, Nos. 8-9, it also agreed to make the records available for inspection, thereby waiving the objections," and it "does not re-assert these objections in its Opposition, ECF No. 44, pp. 6-10."

For the reasons that BCBSTX persuasively explains in its reply, the Court GRANTS in part the MTC as to RFP, Set Two, and Rog, Set Two, to LWCCA and ORDERS LWCIT to, by **April 5, 2021**, serve an amended response to, and, produce all previously unproduced, responsive documents in LWCCA's possession, custody, or control in response to, RFP, Set Two, No. 24 in compliance with Federal Rule of Civil Procedure 34(b)'s requirements and serve amended answers to Rog, Set Two, Nos. 8 and 9 that, in compliance with Federal Rule of Civil Procedure 33's

requirements, provide the responsive, relevant information reasonably available to it.

## XI.    **Award of expenses**

Under Federal Rule of Civil Procedure 37(a)(5)(C), the Court determines that, considering all of the circumstances here and the Court's rulings above as to the discovery requests at issue, the parties will bear their own expenses, including attorneys' fees, in connection with the MTC.

### Conclusion

For the reasons and to the extent explained above, the Court GRANTS in part and DENIES in part BCBSTX's Motion to Compel Plaintiffs to Produce Documents and Respond to Interrogatories [Dkt. No. 40].

SO ORDERED.

DATED: March 5, 2021

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE