IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

LYMPHEDEMA & WOUND CARE          §
CONSULTANTS OF AMERICA, INC.     §
D/B/A LYMPHEDEMA & WOUND         §
CARE INSTITUTE AND               §
LYMPHEDEMA & WOUND CARE          §
INSTITUTE OF TEXAS, INC. D/B/A   §
LYMPHEDEMA AND WOUND CARE        §
INSTITUTE,                       §
                                 §          No. 3:19-cv-2164-X
        Plaintiffs,              §
                                 §
V.                               §
                                 §
HEALTH CARE SERVICE              §
CORPORATION d/b/a BLUE CROSS &   §
BLUE SHIELD OF TEXAS,            §
                                 §
        Defendant.               §

**MEMORANDUM OPINION AND ORDER**

Defendant, Blue Cross and Blue Shield of Texas, a division of Health Care
Service Corporation, a Mutual Legal Reserve Company ("BCBSTX"), has filed a
Motion to Dismiss with Prejudice the Claims of Lymphedema & Wound Care
Consultants Of America, Inc. d/b/a Lymphedema & Wound Care Institute and for
Sanctions for Failure to Comply with the Court's March 5, 2021 Discovery Order
Under Fed. R. Civ. P. 37. *See* Dkt. No. 96 (the "Sanctions Motion").

United States District Judge Brantley Starr has referred the Sanctions
Motion to the undersigned United States magistrate judge for a hearing, if
necessary, and determination under 28 U.S.C. § 636(b). *See* Dkt. No. 99.

-1-

Lymphedema & Wound Care Consultants of America, Inc., d/b/a Lymphedema & Wound Care Institute ("LWCCA") responded to the Sanctions Motion, *see* Dkt. No. 103, and BBSTX filed a reply, *see* Dkt. No. 105.

## Background

The parties are very familiar with the background of this case. So the Court will not repeat it here and will instead focus on the background of the Sanctions Motion.

In a March 5, 2021 Memorandum Opinion and Order, the Court granted in part and denied in part BCBSTX's Motion to Compel Plaintiffs to Produce Documents and Respond to Interrogatories [Dkt. No. 40]. *See* Dkt. No. 68. In particular, the Court ordered as follows:

> **VI. RFP, Set One, No. 6 and Rog, Set One, No. 2(a) & 2(c) to LWCCA**
> RFP, Set One, No. 6, requests:
> A data export from your billing or other electronic systems in Excel (and, if not capable of being exported in Excel format, then in Access or comma-delimited format) sufficient to show the following for each of the Claims [defined as any medical claim or invoice submitted by Plaintiffs to BCBSTX for payment] identified in response to Interrogatory No. 1: Member's last name, Member's first name, date of birth, member ID number, group ID number, Claim Number, date of service, Claim's CPT Code(s), Claim's HCPCS Code(s), billed charge(s), date the Claim was submitted to BCBSTX, amount of payment received from Member, date of receipt of payment from Member, amount of payment received from BCBSTX, date of receipt of payment from BCBSTX, amount(s) of any subsequent payment(s) received from BCBSTX, and date(s) of receipt of any such subsequent payment(s) from BCBSTX.
>
> ROG, Set One, No. 2 (a) and (c) asks, in pertinent part:
> For each Claim in your answer to Interrogatory No. 1, identify:

    a. the amount you allege BCBSTX was required to pay you, in addition to any amounts it has previously allowed for each Claim; …

    c. the factual and legal basis for your claim to be entitled to any amount identified in response to subsection a above[.]

BCBSTX explains:

    The Excel exports (or spreadsheets) Plaintiffs have produced in response to this Request are deficient because they fail to identify the Claims at issue – specifically, the dates of service in dispute for each patient – as well as the nature of the dispute. Mainly, the Excel exports list thousands of dates of services with various codes beyond CPT Code 97140 and HCPCS Code S8950 that may or may not be at issue in this litigation. Hardy Decl., ¶¶ 7-8, 27-31. In informal discussions, LWCIT had represented to BCBSTX that the only Claims it is putting at issue in this lawsuit are those with CPT Code 97140 and HCPCS Code S8950. Id., ¶ 19. Yet, LWCIT has refused to explain why its spreadsheets include dates of services with various other codes. Id., ¶ 21. LWCCA likewise has yet to articulate what CPT and HCPCS Codes it is putting at issue. Id., ¶ 27. Further, both LWCIT and LWCCA have yet to produce all fields requested in RFP, Set One, No. 6, including, but not limited to, any payments received from BCBSTX subsequent to the original adjudication of a Claim.

    ….

    To date, Plaintiffs have only provided a vague and generic answer asserting that Plaintiffs are entitled to additional payments because, among other things, BCBSTX purportedly placed Plaintiffs in pre-payment review for certain unidentified Claims, wrongly recouped money for other unidentified Claims, and/or "bundled" some other unidentified Claims. This answer is nonresponsive, does not identify specific factual and legal theories of liability or recovery, and does not identify which individual Claims are impacted by each such theory of liability or recovery, and the additional amounts Plaintiffs contend BCBSTX is purportedly required to pay Plaintiffs for each Claim. Hardy Decl., Exs. C-1, C-2. However, pursuant to ROG, Set One, No. 2(a) and (c) – to which Plaintiffs did not object – Plaintiffs must provide a response for each Claim it contends to be at issue (i.e., identified in ROG, Set One, No. 1). Given Plaintiffs' complete failure to identify the Claims at issue in this litigation, the factual and legal bases that purportedly entitle

LWCIT and LWCCA to millions of dollars in additional payments, and the additional payment per Claim Plaintiffs contend they are entitled to receive, BCBSTX has no means to understand what Claims are at issue in this litigation and why Plaintiffs contend BCBSTX underpaid for specific dates of service for those Claims. Only Plaintiffs can provide this information to BCBSTX. Without this information, BCBSTX literally has to guess which of the thousands of dates of service for the multitude of patients Plaintiffs have included in their spreadsheets are at issue. Moreover, without knowing the factual and legal basis supporting each Claim, BCBSTX has no way of knowing what it purportedly did or failed to do in breach of its contracts with Plaintiffs with respect to any individual Claim.

Accordingly, the Court should order Plaintiffs to produce all requested information for each Claim, in response to RFP, Set One, No. 6, and ROG, Set One, No. 2.

LWCCA responds that

[t]his request is not proportional to the needs of this case because Defendant is already in possession of sufficient information to identify for itself the nature of each claim. Like LWCIT, LWCCA has already produced, through discovery in this suit and the pre-payment audit, the dates of service for each patient, as well as the following for each patient claim:

- Patient name
- Description of services provided
- Related CPT code (universal codes known to Defendant)
- Billed charges
- Provider identification

Defendant complains that LWCCA has failed to identify the specific nature of each dispute. But in order to provide the factual and legal basis that gives rise to each Claim, LWCCA would need to review roughly a total of 69,845 line items, ERA's, denial notices, and other pertinent correspondence, all of which, again, Defendant was in possession of before this litigation began. See Exhibit 2, Declaration of Shanna McKinley. LWCCA does not have the resources or staff to timely complete such a task; While Defendant is a billion-dollar company with 16 million members, LWCCA has only three administrative employees (non-clinical staff) with the skill set and access to review and compile the requested information. *Id.* Accordingly,

-4-

it would take LWCCA up to a year to provide specific descriptions for each patient.

Alternatively, LWCCA requests that the Court permit it to provide the information requested for a representative sample of claims.

BCBSTX replies that LWCCA waived any objections:

Plaintiffs agreed without objection to both identify the Claims at issue and the legal and factual basis for their allegation that they are owed damages as to each Claim in response to RFP Set One, No. 6, and ROG, Set One, No. 2. ECF No. 41, pp. 26-27, 32-33, 39, 47. Plaintiffs cannot object now, for the first time, in their Opposition that it is unduly burdensome and disproportionate to the needs of the case to provide this information. Failure to timely object to discovery results in waiver of the objection. …. Courts routinely find objections waived when not timely raised and, accordingly, order the production of documents and information. ….

Plaintiffs have no good cause for their failure to timely object. They now claim for the first time that it would take them months to identify the factual and legal bases for each of the Claims they have put at issue. [Plaintiffs' voluminous spreadsheets list many CPT codes that may or may not be at issue. As explained in the Memorandum and not disputed by Plaintiffs, in informal discussions, LWCIT represented to BCBSTX that the only Claims it is putting at issue are those with CPT Code 97140 and HCPCS Code S8950. ECF No. 40, p. 9. Yet, LWCIT has refused to explain why its spreadsheets include dates of service that do not even include those codes. Id. LWCCA likewise has yet to articulate which CPT/HCPCS codes on its Claims it is putting at issue or why. Id. In their Opposition, Plaintiffs did not dispute or respond to this and do not mention, even in passing, the CPT/HCPCS codes they contend were wrongfully denied or underpaid. See, ECF No. 44. As such, their spreadsheets are unhelpful and incomplete, as Plaintiffs admit. Id., p. 8 (admitting that LWCCA's spreadsheets include most, but not all of the information.). The critical information they omit is among the information BCBSTX seeks by its Motion.] But Plaintiffs presumably knew this when they served their responses to BCBSTX's discovery and said nothing. It also appears that Plaintiffs did nothing after being served with BCBSTX's requests in August 2020 until now to attempt to collect and produce the requested information and documents.

Indeed, Plaintiffs do not offer any reason why they waited until now – after discovery has closed, and only after BCBSTX was forced to file this Motion to Compel – to raise these issues for the first time. See ECF No. 44-1, 44-2.

Even if Plaintiffs had asserted timely objections, their objections cannot overcome BCBSTX's need for the information. Notably, and as an initial matter, Plaintiffs have refused to even confirm either in discovery or in their Opposition which of the thousands of claims they list in their spreadsheets constitute the Claims at issue.2 See ECF 44 (never identifying the CPT Codes at issue). Without this basic information, BCBSTX cannot even be sure what claims to defend.

Moreover, and importantly, Plaintiffs do not claim that there is a one-size-fits-all explanation for why Plaintiffs are entitled to more money that applies to all Claims, effectively conceding that they are alleging different theories of breach with respect to different Claims. As Plaintiffs themselves admit, they have submitted "thousands of claim lines . . for reimbursement over several years," and each patient "could have several dates of treatment weekly for weeks or months;" "each date of treatment may ... involve multiple services" and "each service is represented by a different CPT code." ECF No. 44, p. 6 (emphasis in original); p. 8-9 (also explaining that LWCCA submitted thousands of claims for reimbursement). It is precisely because Plaintiffs have submitted thousands of claims, each involving different services and CPT/HCPCS codes, that only Plaintiffs can identify both the Claims and the reasons they assert they are owed more money for each Claim – only they possess this information. If Plaintiffs cannot explain what it is about BCBSTX's processing of a Claim that they are disputing, BCBSTX is left to guess what is in dispute and why, to the detriment of its ability to defend itself.

Plaintiffs cannot avoid their discovery obligations merely by asserting that BCBSTX purportedly placed them on prepayment review. Prepayment review means just that – that BCBSTX reviewed a claim and its associated medical records prior to processing it, resulting either in a denial or payment of the claim. Yet, Plaintiffs have not even identified which of the claims that went through this process and that are listed in their voluminous spreadsheets, which were paid or denied, are Claims at issue here and why BCBSTX's resolution of those claims was somehow incorrect. The dodge in Plaintiffs' Opposition is thus apparent: pointing out that BCBSTX

reviewed many claims before Plaintiffs filed suit does not at all explain why they contend additional benefits are payable on any of them – a point on which they of course bear the ultimate burden of production and persuasion in their case in the first place.

It is also no response to brush off discovery in the lawsuit by asserting that all of the information requested by RFP, Set One, No. 6 and ROG, Set Two, No. 2 (a) and (c), was provided prior to the litigation during the "pre-payment audit." ECF No. 44, p. 5, 8. Even assuming that were true, Plaintiffs submitted thousands of claims to BCBSTX over many years. BCBSTX should not be forced to blindly wade through all of those records when Plaintiffs refuse to tell BCBSTX which of the claims they submitted are at issue and why.

Plaintiffs' belated and hollow offer to produce documents and information relating to a "representative sample" of the Claims at issue is a non-starter, particularly at this stage of the litigation. Initially, sampling is a means to test and, in the appropriate case, extrapolate and present underlying facts; it is not a substitute for Plaintiffs articulating what they are challenging and why, let alone a fishing expedition in lieu of having any presently identifiable grounds after the close of discovery and almost two years into the case. Moreover, Plaintiffs do not offer a concrete proposal or any level of detail as to how a statistically sound sampling process would work, or even what it would sample the Claims for. Nor would such a conversation be possible without much of the discovery that has been requested, such as the types of disputes or issues that are being challenged. This eleventh hour, detail-free proposal is emblematic of Plaintiffs' overall approach to Discovery – hide the ball and then attempt to force BCBSTX to do the work of figuring out why Plaintiffs are suing.

Accordingly, the Court should compel Plaintiffs to confirm which of the thousands of claims they list in their spreadsheets are Claims at issue here and identify the factual and legal bases that purportedly entitle them to additional payments for the Claims they have at issue.

On this record, LWCCA waived the objections on which it now relies by failing to raise them.

Further, for the reasons that BCBSTX persuasively explains in its reply, this discovery – although extensive – is proportional to the needs of the case considering the parties' relative access to this information and its

importance to LWCCA's claims and BCBSTX's ability to defend against the claims.

For the reasons that BCBSTX explains in its reply, the Court GRANTS the MTC as to RFP, Set One, No. 6 and Rog, Set One, No. 2(a) & 2(c) to LWCCA and ORDERS LWCCA to, by **April 5, 2021**, serve an amended response to, and, produce all previously unproduced, responsive documents in LWCIT's possession, custody, or control in response to, RFP, Set One, No. 6 in compliance with Federal Rule of Civil Procedure 34(b)'s requirements and serve amended answers to Rog, Set One, No. 2(a) & 2(c) that, in compliance with Federal Rule of Civil Procedure 33's requirements, provide the responsive, relevant facts reasonably available to it.

## VII. <u>RFP, Set One, No. 1 to LWCCA</u>

RFP, Set One, No. 1, requests:

All Documents and Communications related to the Claims identified in your answer to Interrogatory No. 1, including, but not limited to, patient intake records, patient insurance cards, assignments of benefits, medical records, benefit verification records, preauthorization/precertification records, call notes or logs, call recordings, Claim forms, UB forms, remittance reports, remittance notices, transaction detail records, collection notes or collection records, and all payment and account records.

BCBSTX explains:

To date, Plaintiffs' production in response to Request No. 1 is woefully incomplete. Plaintiff LWCIT has merely provided medical records relating to four patients, and even those productions have been partial and incomplete. Hardy Decl., ¶ 20. LWCCA has repeatedly promised that it would produce medical records, but it has not done so. Id., ¶¶ 12-13, 14-15, 29-30.

Because Plaintiffs' entire case rests on showing that it provided the services billed on the Claims and that the underlying medical records justify the CPT and HCPCS Codes billed for those services, Request No. 1 necessarily includes medical records for all of the BCBSTX members to whom Plaintiffs allegedly provided the services for which they now seek additional payments. These medical records are critical to BCBSTX's defense, as they will permit BCBSTX to verify whether Plaintiffs actually provided the services that support their Claims and, if so, whether they correctly billed BCBSTX for such services. It would be patently unfair to allow Plaintiffs to pursue claims against BCBSTX for purported breach of

contract for failure to pay for services, when Plaintiffs have failed and refused to produce the very records that could verify whether they actually provided those services and that arguably support the CPT and HCPCS Codes for which Plaintiffs claim BCBSTX should pay. This is especially true when BCBSTX has already discovered, in the limited productions Plaintiffs have made to date, medical records for dates of service purportedly approved by Dr. Share, when Dr. Share was no longer associated with LWCIT.

The Court therefore should compel Plaintiffs to produce medical records for every Claim for which they seek additional payment.

LWCCA responds that it "has produced spreadsheets identifying all claims which are the subject of this lawsuit" and that "[i]t would take a year or more for LWCCA to produce all of the information requested by Defendant," but, "[a]lternatively, LWCCA requests that the Court permit LWCCA to provide the information requested for a representative sample of claims."

BCBSTX replies that LWCCA has also not been forthcoming with BCBSTX regarding the production of its medical records in response to RFP, Set One, No. 1. For one thing, LWCCA strung BCBSTX along for months with promises that it would produce its medical records – first, in paper, and then, electronically, ECF No. 41, pp. 56-60, 87, only to now claim for the first time that the records it had in hard copy were damaged by Hurricane Harvey in 2017. ECF No. 44-2, p. 3. LWCCA has no explanation for why it is just disclosing this information now, see ECF No. 44 and 44-2, after discovery closed more than a month ago and after BCBSTX was forced to file this Motion.

LWCCA has also waived its new, belatedly asserted objection that it would be unduly burdensome to produce the medical records it does have. ECF No. 44, p. 9; ECF No. 44-2, p. 3. LWCCA agreed to produce these records without objection in its discovery responses. ECF No. 41, p. 46. Its burden objection therefore is not timely. *Morris*, 2017 WL 10841356, at *2.

Moreover, LWCCA cannot satisfy its discovery obligations by making the entirety of its records available to BCBSTX and placing the burden on BCBSTX to comb through all of those records to find the ones that might relate to the Claims. *See* ECF No. 44-2, p. 3 (proposing to have a BCBSTX's representative access LWCCA's medical record and billing systems to search for

the records it has requested). Such tactics are prohibited by the Federal Rules of Civil Procedure. *McKinney/Pearl Rest. P'ners, L.P. v. Metro. Life Ins. Co.*, 322 F.R.D. 235, 249 (N.D. Tex. 2016) (Federal Rule 34(b)(2)(i) "forbids 'dump truck' discovery tactics, where a party delivers voluminous and poorly organized documents to his adversary, who is forced to rummage through piles of paper in search of what is relevant.") (internal quotation marks and citation omitted); *ReedHycalog UK, Ltd. v. United Diamond Drilling Servs., Inc.*, No. 6:07 CV 251, 2008 WL 11348342, at *2 (E.D. Tex. Oct. 3, 2008) ("This Court does not endorse a method of document production that merely gives the requesting party access to a 'document dump' with an instruction to 'go fish.'") (quoting *Residential Constr., LLC v. ACE Prop. & Cas. Ins. Co.*, No. 2:05-CV-1318, 2006 WL 1582122, at *2 (D. Nev. June 5, 2006)).

On this record, LWCCA waived the objections on which it now relies by failing to raise them.

Further, for the reasons that BCBSTX persuasively explains in its reply, this discovery – although extensive – is proportional to the needs of the case considering the parties' relative access to this information and its importance to LWCCA's claims and BCBSTX's ability to defend against the claims.

And the Court agrees with BCBSTX's assertion that LWCCA may not – consistent with Federal Rule of Civil Procedure 34(b)(2)(E)(i)'s requirements – only point BCBSTX to the entirety of its records and place the burden on BCBSTX to, without any organization or direction from LWCCA, comb through all of those records to find the ones that might relate to the Claims.

For the reasons that BCBSTX persuasively explains in its reply, the Court GRANTS the MTC as to RFP, Set One, No. 1 and ORDERS LWCCA to, by **April 5, 2021**, serve an amended response to, and, produce all previously unproduced, responsive documents in LWCCA's possession, custody, or control in response to, RFP, Set One, No. 1 in compliance with Federal Rule of Civil Procedure 34(b)'s requirements.

Dkt. No. 68 at 24-31.

BCBSTX now asserts that

[t]he Court should dismiss LWCCA's causes of action against BCBSTX with prejudice pursuant to Federal Rule of Civil Procedure 37 for its failure to comply with the discovery rules and this Court's Order. On

March 5, 2021, the Court issued a detailed, 38-page order granting BCBSTX's Motion to Compel discovery responses in substantial part. The Order directed LWCCA to produce documents and information that the Court acknowledged are critical to BCBSTX's ability to defend itself in this matter, no later than April 5, 2021. LWCCA failed to do so. Instead, LWCCA produced admittedly incomplete documents and information by April 5, and then – after BCBSTX pointed out LWCCA's non-compliance with the Order – LWCCA attempted to supplement its production with untimely and still incomplete spreadsheets of claim information nearly a month later. And, critically, LWCCA has not produced medical records for most of the dates of service at issue. Despite its untimely efforts to shore up its production, LWCCA has not come close to producing the documents and information ordered by the Court. Given LWCCA's history of disregarding its discovery obligations and blatant disregard for the Order in particular, as well as the resulting prejudice to BCBSTX, dismissal is warranted.

Accordingly, BCBSTX respectfully requests that the Court dismiss LWCCA's complaint with prejudice. In the alternative, BCBSTX urges the Court to limit LWCCA's evidence to those claim lines (1) for which LWCCA included a factual basis for its payment demand; (2) for which it produced matching medical records; and (3) that it did not add for the first time to the spreadsheets it produced in response to the Court Order, after discovery had closed on January 6, 2021 – a total of 0 claim lines out of 66,781 total claim lines purportedly at issue. [As used herein, "claim" refers to any benefit claim submitted by LWCCA to BCBSTX for payment for a particular patient for a given date of service. A "claim line" refers to each separate service provided to a patient on a particular date of service, as represented on the claim. A claim may contain more than one claim line if, for example, multiple separate services were rendered to a patient on a particular date of service.] If the Court is disinclined to so exclude all claim lines, the Court should limit LWCCA's evidence, at most, to that relating to the 12 claim lines with a factual basis and matching medical record, for the only two patients for which LWCCA provided such information and did not add for the first time to the spreadsheets in response to the Court Order.

Dkt. No. 96 at 1-2 (footnote omitted).

More specifically, BCBSTX requests that

-11-

the Court dismiss with prejudice LWCCA's claims against BCBSTX or, in the alternative that the Court issue an order limiting the evidence LWCCA may present at summary judgment or trial to that relating to:

- Those claims lines (1) for which LWCCA included a factual basis for its payment demand; (2) that LWCCA did not add for the first time after discovery closed; and (3) for which LWCCA produced matching medical records – a total of 0 claim lines.
- Or, in the alternative, to the 12 claims lines (1) for which LWCCA included a factual basis for its payment demand; (2) for which LWCCA produced matching medical records; and (3) which correspond to patients B.K. and B.W. – even though LWCCA only disclosed these claim lines for the first time in its New Spreadsheets, after discovery closed.

In addition, BCBSTX requests that the Court grant it its attorneys' fees in connection with this Motion.

Dkt. No. 96 at 21-22.

LWCCA responds that

BCBSTX now feigns ignorance about the claims at issue and the amounts that LWCCA claims it still owes, to try to have LWCCA's entire case dismissed with prejudice. Dismissal with prejudice of course would allow BCBSTX to dodge its contractual reimbursement obligations altogether.

BCBSTX would lead the Court to believe that LWCCA still has not disclosed basic information about its claims that the Court ordered it to produce by April 5, 2021 in response to BCBSTX's motion to compel. But LWCCA did produce the vast majority of the required information by the Court's deadline. The only information produced after the deadline (and, even then, just 25 days after the deadline) was an "allowed amount" column on LWCCA's claims spreadsheets showing the exact amount that LWCCA contends it is owed for the services it rendered to BCBSTX's members. The only information required by the Court that LWCCA was unable to produce was a few hundred paper patient medical files destroyed in Hurricane Harvey. Thus, BCBSTX has had everything required by the Court's order in LWCCA's possession, custody, or control since April 30, 2021 or earlier (almost four months ago).

BCBSTX cannot establish that it suffered any prejudice as a result of its receiving the "allowed amount" column on LWCCA's supplemental spreadsheets just 25 days after the Court's deadline – let alone any of the other factors required to justify sanctions under Rule

37. This is all the more true because the Court recently extended all deadlines in the case by 90 days on BCBSTX's motion, causing a continuance of the January 19, 2022 trial date to at least mid-April 2022 (some eight months from now). *See* Dkt. Nos. 74 (Fourth Amended Scheduling Order) and 94 (July 2, 2021 order). LWCCA's need for a mere 25 extra days to be able to produce an "allowed amount" for each of the claim lines at issue is no basis to issue the extreme sanctions that BCBSTX seeks against LWCCA.

BCBSTX is being a bully to LWCCA. The Court should deny BCBSTX's Motion to Dismiss with Prejudice.

Dkt. No. 103 at 4-5.

In reply, BCBSTX asserts that LWCCA's response

confirms that the Court should dismiss LWCCA's claims against BCBSTX with prejudice. LWCCA's Opposition does not meaningfully dispute the deficiencies alleged in the Motion. For instance, LWCCA concedes that it provided a "reason for payment demand" for only 178 of 66,781 claim lines. And LWCCA concedes it added hundreds of new patients and claims in the spreadsheets it provided in April 2021, long after discovery had closed. LWCCA also concedes that it has not provided medical documents for hundreds of patients. LWCCA's brazen disregard for its discovery obligations and the Court's order – and the resulting prejudice to BCBSTX – make clear that the only appropriate sanction is dismissal with prejudice. LWCCA's defiant Opposition confirms it.

Dkt. No. 105 at 1-2 (footnote omitted).

BCBSTX's reply also requests that, in the alternative,

the Court preclude LWCCA from introducing evidence it has refused to produce to BCBSTX in blatant disregard of the Court's Order. LWCCA's arguments to the contrary are unpersuasive.

LWCCA arguments to the contrary largely mirror its arguments as to terminating sanctions. Opp. at 16-18. They lack merit for the same reasons discussed above. First, LWCCA again incorrectly states (without citation) that it provided all relevant information regarding LWCCA's claims. *Id.* at 17. That is simply not the case. *See supra* Sections I & II. LWCCA argues that BCBSTX "has patient files covering at least 24,790 of the claim lines in question." Opp. at 17. But this overlooks the whole picture. Providing pieces of information here

and there does not cut it. At bottom, LWCCA failed to produce complete information for any single patient identified in the December Spreadsheet and produced complete information for 0 claim lines in the December Spreadsheet. Mot. at 10. In short, if the Court is not inclined to award terminating sanctions, BCBSTX respectfully requests that the Court should issue an order limiting the evidence LWCCA may present at summary judgment or trial.

....

LWCCA argues that the Court should not award attorneys' fees in connection with the Motion because "LWCCA substantially complied with the Court's order on BCBSTX's motion to compel by the April 5th deadline, and it fully complied by April 30th...." Opp. at 18. As discussed above (see supra Sections I & II), LWCCA neither substantially complied nor fully complied with the Court's Order. Indeed, LWCCA's willful failure to provide the legal and factual bases of each claim – after representing to the Court that it fully understood that doing so would entail providing the specific basis for each claim and not a generic statement that purports to cover all claims – is sufficient on its own to demonstrate that LWCCA did not substantially (let alone fully) comply with the Court's Order. *See, e.g.*, *supra* pp. 2-3.

Dkt. No. 105 at 9-10 (footnote omitted).

## Legal Standards

Federal Rule of Civil Procedure 37(b)(2)(A) provides that, "[i]f a party ... fails to obey an order to provide or permit discovery, ... the court where the action is pending may issue further just orders. They may include the following: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the

action or proceeding in whole or in part; [or] (vi) rendering a default judgment against the disobedient party." FED. R. CIV. P. 37(b)(2)(A)(i)-(vi).

Rule 37(b)(2)(C) further requires that, "[i]nstead of or in addition to the orders [described under Rule 37(b)(2)(A)], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C). "A party's discovery conduct is found to be 'substantially justified' under Rule 37 if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" *S.E.C. v. Kiselak Capital Grp., LLC*, No. 4:09-cv-256-A, 2012 WL 369450, at *5 (N.D. Tex. Feb. 3, 2012) (quoting *Devaney v. Continental Am. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993) (in turn quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988))). "The burden rests on the party who failed to comply with the order to show that an award of attorney's fees would be unjust or that the opposing party's position was substantially justified." *Id.* at *3 (footnote omitted).

The undersigned has authority to enter a nondispositive order granting attorneys' fees or other nondispositive sanctions under Federal Rule of Civil Procedure 37(b) or denying a request for what might be considered a dispositive sanction. *See* 28 U.S.C. § 636(b); *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1016-17 (5th Cir. Unit A 1981) (per curiam) (a magistrate judge has authority to enter a nondispositive order granting attorneys' fees as a sanction under Federal

Rule of Civil Procedure 37); *Siegel v. Compass Bank*, No. 3:18-cv-1023-X, 2021 WL 4498914, at *1 (N.D. Tex. Jan. 11, 2021) ("To determine whether a referred motion for sanctions is dispositive or non-dispositive, the sanction chosen by the magistrate judge, rather than the sanction sought by the party, governs the determination of whether Rule 72(a) or 72(b) applies. To allow otherwise would permit the party seeking sanctions to engage in a game of labels that would improperly dictate the standard of review." (cleaned up)); *Brown v. Bridges*, No. 3:12-cv-4947-P, 2015 WL 410062, at *1-*4 (N.D. Tex. Jan. 30, 2015) (explaining that, when a district judge refers a motion for sanctions to a magistrate judge, the sanction chosen by the magistrate judge, rather than the sanction sought by the party, governs the determination of whether Federal Rule of Civil Procedure 72(a) or 72(b) applies and that, when the magistrate judge finds that dismissal or another sanction disposing of a claim or defense is unwarranted, the motions should be characterized as non-dispositive and may be ruled on by the magistrate judge) (followed in *Green Hills Dev. Co., LLC v. Credit Union Liquidity Servs., LLC*, No. 3:11-cv-1885-L-BN, Dkt. No. 373 at 2 (N.D. Tex. Dec. 1, 2016)).

Rule 37(b)(2) "empowers the courts to impose sanctions for failures to obey discovery orders. In addition to a broad range of sanctions, including contempt, FED. R. CIV. P. 37(b)(2) authorizes the court to impose a concurrent sanction of reasonable expenses, including attorney's fees, caused by the failure to obey a discovery order." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (internal quotation marks omitted); *see also Chilcutt v. United States*, 4 F.3d 1313,

1322 n.23 (5th Cir. 1993) ("Rule 37(b) clearly indicates that district courts have authority to grant a broad spectrum of sanctions.").

"The district court has broad discretion under Rule 37(b) to fashion remedies suited to the misconduct." *Smith*, 685 F.3d at 488 (internal quotation marks omitted). "This discretion, however, is limited" based on the type of sanctions imposed. *Id.* The United States Court of Appeals for the Fifth Circuit has recently explained that

> our caselaw imposes a heighted standard for litigation-ending sanctions (sometimes called "death penalty" sanctions). For a lesser sanction, we broadly require the district court to determine the sanctions are "just" and "related to the particular 'claim' which was at issue in the order to provide discovery."

*Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019) (cleaned up). The sanction imposed should be the least severe sanction adequate to achieve the proper functions of Rule 37(b)(2) under the particular circumstances. *See Smith*, 685 F.3d at 488-90. And the Fifth Circuit very recently repeated its guidance that,

> to levy a litigation-ending sanction for a discovery violation, the court must make four findings. First, the violation reflects bad faith or willfulness. Second, "the client," not counsel, "is responsible for the violation." Third, the violation "substantially prejudiced the opposing party." Fourth, "a lesser sanction would not substantially achieve the desired deterrent effect."

*Vikas WSP, Ltd. v. Econ. Mud Prod. Co.*, ___ F.4th ___, No. 20-20309, 2022 WL 92861, at *8 (5th Cir. Jan. 10, 2022) (cleaned up); *accord Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1304 (5th Cir. 1988) ("We have repeatedly emphasized that a dismissal with prejudice is a 'draconian' remedy, or a 'remedy of the last resort,' to

be employed only when the failure to comply with the court's order results from wilfullness or bad faith rather than from an inability to comply. Nevertheless, deliberate, repeated refusals to obey discovery orders have been held to warrant the use of this ultimate sanction." (footnote omitted)); *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 514 (5th Cir. 1985) ("[D]ismissal is authorized only when the failure to comply with the court's order results from wilfulness or bad faith, and not from the inability to comply.").

But "[l]esser sanctions do not require a finding of willfulness." *Smith*, 685 F.3d at 488. "Of course, the flagrancy of a party's behavior must be directly proportionate to the severity of the sanction imposed," but "the lack of willful, contumacious, or prolonged misconduct [does not] prohibit[] all sanctions." *Chilcutt*, 4 F.3d at 1322 n.23. Even where a party was "unable to comply with the discovery requests, the district court still ha[s] broad discretion to mete out a lesser sanction than dismissal." *Id.* (emphasis omitted). That is because "the type of conduct displayed by a party had no bearing on whether sanctions should be imposed, but only on the type of sanctions imposed," and "[t]he willfulness or good faith of [a party], can hardly affect the fact of noncompliance and [is] relevant only to the path which the District Court might follow in dealing with [the party's] failure to comply." *Id.* (internal quotation marks and emphasis omitted).

Rule 37(b) "is designed to empower the court to compel production of evidence by the imposition of reasonable sanctions." *Dorsey v. Acad. Moving & Storage, Inc.*, 423 F.2d 858, 860 (5th Cir. 1970). "Sanctions under Rule 37 serve the dual function

of reimbursing the moving party and deterring the violator of the discovery orders (as well as other potential violators)." *Day v. Allstate Ins. Co.*, 788 F.2d 1110, 1114 (5th Cir. 1986). And courts have found sanctions excluding evidence or claims of damages appropriate where, for example, a party instructs its witness to violate a court order. *See Certain Underwriters at Lloyds London v. Corp. Pines Realty Corp.*, 355 F. App'x 778, 780 (5th Cir. 2009).

## Analysis

Over LWCCA's opposition, including assertions that, "in order to provide the factual and legal basis that gives rise to each Claim, LWCCA would need to review roughly a total of 69,845 line items, ERA's, denial notices, and other pertinent correspondence," and that "[i]t would take a year or more for LWCCA to produce all of the information requested by Defendant," the Court ordered LWCCA to fully respond and answer to RFP, Set One, Nos. 1 and 6 and Rog, Set One, No. 2(a) and 2(c)

These RFPs and interrogatories required LWCCA to produce and serve (1) a data export from LWCCA's billing or other electronic systems in Excel showing, for each of the Claims [defined as any medical claim or invoice submitted by Plaintiffs to BCBSTX for payment] Member's last name, Member's first name, date of birth, member ID number, group ID number, Claim Number, date of service, Claim's CPT Code(s), Claim's HCPCS Code(s), billed charge(s), date the Claim was submitted to BCBSTX, amount of payment received from Member, date of receipt of payment from Member, amount of payment received from BCBSTX, date of receipt of

payment from BCBSTX, amount(s) of any subsequent payment(s) received from BCBSTX, and date(s) of receipt of any such subsequent payment(s) from BCBSTX as well as (2) interrogatory answers identifying for each Claim (a) the amount that LWCCA alleges that BCBSTX was required to pay LWCCA in addition to any amounts it has previously allowed for each Claim and (b) the factual and legal basis for LWCCA's claim to be entitled to any amount identified and (3) all documents and communications related to each Claim at issue, including, but not limited to, patient intake records, patient insurance cards, assignments of benefits, medical records, benefit verification records, preauthorization/precertification records, call notes or logs, call recordings, Claim forms, UB forms, remittance reports, remittance notices, transaction detail records, collection notes or collection records, and all payment and account records.

Based on LWCCA's supplemental answers and production and supporting declaration, the Court cannot agree with BCBSTX that LWCCA's response to the Court's March 5, 2021 order merits dismissal under the stringent governing standard. For the reasons that LWCCA explains, the fact that LWCCA has provided a "reason for payment demand" in its spreadsheet for only 178 of 66,781 claim lines does not demonstrate that LWCCA failed to adequately identify the factual and legal basis for LWCCA's claim to be entitled to any amounts identified. Neither does LWCCA's adding hundreds of new patients and claims in the spreadsheets that it served in April 2021 demonstrate any willful or bad faith violation of the Court's March 5, 2021 discovery order. And LWCCA had identified at the time of briefing on

the motion to compel that the Court's March 5, 2021 order granted in part that medical records that LWCCA had in hard copy were damaged by Hurricane Harvey in 2017. *See* Dkt. No. 68 at 31.

BCBSTX's alternative requests also hinge on BCBSTX's insistence that LWCCA's providing a "reason for payment demand" in its spreadsheet for only 178 of 66,781 claim lines demonstrates that LWCCA failed to adequately identify the factual and legal basis for LWCCA's claim to be entitled to any amounts identified as to any other claim lines. *See* Dkt. No. 96 at 6, 9-10. BCBSTX's request for alternative relief – limiting LWCCA to claims as to which BCBSTX contends that LWCCA has fully complied with its discovery obligations – is a request for dismissal by another name. BCBSTX is unhappy with the extent of what LWCCA has produced, but, on this record, it appears to the Court that LWCCA – after arguing unsuccessfully that it should not be required to do so – has now attempted to produce all the responsive information and records that it has available to support its claims.

The Court, in short, finds that Rule 37(b)(2) sanctions are not warranted for LWCCA's alleged violations of the Court's March 5, 2021 discovery order. But, in addition to Rule 37(b)(2), Federal Rule of Civil Procedure 37(c)(1) provides that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." If LWCCA attempts at trial or summary judgment to use new or

additional information that should have been produced in connection with the Court's March 5, 2021 discovery order, BCBSTX may make appropriate requests to the Court to exclude the use of that information or data.

## Conclusion

For the reasons explained above, the Court DENIES Defendant's Motion to Dismiss with Prejudice the Claims of Lymphedema & Wound Care Consultants Of America, Inc. d/b/a Lymphedema & Wound Care Institute and for Sanctions for Failure to Comply with the Court's March 5, 2021 Discovery Order Under Fed. R. Civ. P. 37 [Dkt. No. 96].

SO ORDERED.

DATED: January 24, 2022

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE