UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LYMPHEDEMA & WOUND CARE CONSULTANTS OF AMERICA, INC., d/b/a LYMPHEDEMA & WOUND CARE INSTITUTE, and LYMPHEDEMA & WOUND CARE INSTITUTE OF TEXAS, INC. d/b/a LYMPHEDEMA & WOUND CARE INSTITUTE,<br><br>*Plaintiffs*,<br><br>v.<br><br>HEALTH CARE SERVICE CORPORATION d/b/a BLUE CROSS & BLUE SHIELD OF TEXAS,<br><br>*Defendant*. | Civil Action No. 3:19-cv-02164-X |

## MEMORANDUM OPINION AND ORDER

Defendant Blue Cross and Blue Shield of Texas ("Blue Cross") filed two motions for summary judgment regarding the claims of Lymphedema & Wound Care Institute of Texas, Inc. d/b/a Lymphedema & Wound Care Institute ("Lymphedema Texas") [Doc. No. 121] and Lymphedema & Wound Care Consultants of America, Inc. d/b/a Lymphedema & Wound Care Institute ("Lymphedema America") [Doc. No. 124]. For the below reasons, the Court **GRANTS** the motions and dismisses with prejudice the claims of Lymphedema Texas and Lymphedema America. A separate final judgment will follow.

1

# I. Factual Background

This is a case about Lymphedema Texas and Lymphedema America (collectively, "Plaintiffs") alleging that they are entitled to payment from Blue Cross for services related to the treatment of lymphedema that they allegedly provided to Blue Cross members. Plaintiffs provide comprehensive lymphedema management and operate several lymphedema management centers around Texas.

In 2004, Lymphedema & Wound Care Institute split to form into two independent companies—Lymphedema Texas and Lymphedema America. Despite the split, both companies continue to do business under the name Lymphedema & Wound Care Institute. Lymphedema Texas and Blue Cross signed a ParPlan Provider Contract for Group Practices (the "Lymphedema Texas Agreement") in 2011. And Lymphedema America and Blue Cross signed a ParPlan Provider Contract for Group Practices (the "Lymphedema America Agreement") in 2011.

Plaintiffs sued Blue Cross in 2019. Each plaintiff brought claims for breach of contract and a suit on a sworn account. The complaint alleged that in the timeframe from 2013 to 2018, the plaintiffs "submitted complete and properly executed claims within 30 days of the date [they] rendered services" totaling $1,057,436.20 for Lymphedema Texas and $1,137,709.43 for Lymphedema America, but that Blue Cross "failed to make payment on any of the claims," in contravention of the parties' contract.[1] Other procedural history abounds but is not relevant to the motions for summary judgment Blue Cross filed.

---

[1] Doc. 2 at 4–5.

## II. Legal Standard

District courts can grant summary judgment only if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] A dispute "is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."[3]

## III. Analysis

The Court will consider each motion for summary judgment in turn.

### A. Motion for Summary Judgment Against Lymphedema Texas

Blue Cross's motion against Lymphedema Texas's breach of contract claim argues that Lymphedema Texas has not identified: (1) claim lines in dispute; (2) how Blue Cross breached the Lymphedema Texas Agreement with regard to any claim line; or (3) damages it is entitled to for unidentified claim lines. On the sworn account claim, Blue Cross argues Lymphedema Texas cannot show Blue Cross breached their agreement. Lymphedema Texas responds that an email from Blue Cross admitted in writing it owed Lymphedema Texas at least $205,969.43 that it never paid, creating a fact dispute on the contract and sworn account claims. According to Lymphedema Texas, Blue Cross "admitted to [Lymphedema Texas], both in [its] email and on the phone, that [Blue Cross]'s audit showed that it owed [Lymphedema Texas] $192,392.95 on the first claims spreadsheet, $11,196.67 on the second claims spreadsheet, and $2,379.81 on the third claims spreadsheet, for a total of $205,969.43

---

[2] FED. R. CIV. PROC. 56(a).

[3] *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000) (cleaned up).

3

owed as of the audit date."[4]  Blue Cross replied that: (1) Lymphedema Texas never disclosed this theory in pleadings or discovery requests; (2) the email and spreadsheet Lymphedema Texas raises lack context and specificity to demonstrate a breach; and (3) the email and spreadsheet cannot raise a fact dispute on other claim lines.  The Court agrees with Blue Cross that Lymphedema Texas cannot assert a theory now that it hid from Blue Cross in discovery.

Lymphedema Texas violated its duty to disclose its theory of liability when Blue Cross asked for it in discovery.  This theory is absent from Lymphedema Texas's complaint and was not in its response to Blue Cross Interrogatory 2 seeking the factual and legal bases for its claims.  This Court has repeatedly foreclosed plaintiffs from sandbagging defendants and the Court during discovery to invent a new theory after discovery has closed.[5]  And the Court must hold the line again here.  Lymphedema Texas should have pled this theory.  It didn't.  It should have responded with this theory in response to Interrogatory 2.  It didn't.  It should have fulfilled its duty to supplement discovery during the discovery period.  It didn't.  The Court cannot give Lymphedema Texas a fourth bite at the apple and encourage plaintiffs to sandbag their opponents until after discovery is over.  Accordingly, the only issue

---

[4] Doc. 131 at 4.

[5] *See GlobeRanger Corp. v. Software AG*, 27 F. Supp. 3d 723, 754 (N.D. Tex. 2014) (Boyle, J.) ("It is within this Court's discretion to disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment." (cleaned up)); *De Francheschi v. BAC Home Loans Servicing, LP*, No. 3:09-CV-1667-K, 2011 WL 1456849, at *4 (N.D. Tex. Apr. 14, 2011) (Kinkeade, J.) ("these new factual allegations are not included in Plaintiffs' pleadings, and they cannot rely on them to escape summary judgment").  In a very rare affirmance of Judge Kinkeade by the Fifth Circuit, the Court concluded "district courts do not abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment."  *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012).  Way to go, Ed!!!!

4

Lymphedema Texas raised in response to the motion for summary judgment is foreclosed, and Blue Cross is entitled to summary judgment on Lymphedema Texas's claims.

### B. Motion for Summary Judgment Against Lymphedema America

Blue Cross's summary judgment motion argues: (1) there is no identified factual basis for a payment of any claim lines; (2) there is no evidence of damages; (3) the Lymphedema America Contract and provider manuals authorize prepayment review, which is not a breach; (4) the contract and manuals allow Blue Cross to recoup overpayments; (5) Lymphedema America can't prove codes S8950/97140 may be billed together for services on the same date, same patient, and same anatomic area; (6) Lymphedema America can't show a Blue Cross breach; and (7) 24,744 claim lines at issue are barred by limitations.  Lymphedema America responds that: (1) there is evidence of breach by failing to pay the allowed amount, Blue Cross's baseless pre-pay review (which violates the Texas Prompt Pay Act), and Blue Cross's refusal to pay when Lymphedema America billed S8950 and 97140 together; and (2) Lymphedema America has evidence of millions of dollars in damages.  Blue Cross replies that: (1) Lymphedema America impermissibly raised new theories at this stage; (2) there is no evidence to support the theories Lymphedema America previously raised; and (3) key portions of Lymphedema America's declaration and expert testimony are inadmissible.  The Court agrees with Blue Cross.

First, the Court must identify what Lymphedema America theories of liability are impermissibly new.  The two arguably new theories are: (1) Blue Cross's failure

to pay the "allowed amount" for each claim line at issue breached the contract and (2) Blue Cross violated the Texas Prompt Pay Act regarding its audit procedures. The Prompt Pay Act theory is new, and the Court's discussion above forecloses Lymphedema America from using an undisclosed theory to defeat summary judgment.

The "allowed amount" theory is more complicated. Lymphedema America relied on its second supplemental interrogatory answers to show it put Blue Cross on notice of this theory—only to realize it never served them. But Lymphedema America noted that Blue Cross admitted opposing counsel put it on notice that Blue Cross "paid less than the allowed amount in each instance."[6] The chief concern here is notice. And while Lymphedema America could have notified Blue Cross more effectively (by serving its second supplemental interrogatory answers), its notice was sufficient.

So, what evidence does Lymphedema America have regarding breach or damages for its claims that Blue Cross paid less than the contract allowed and breached with its pre-pay review (in a manner other than violating the Prompt Pay Act)? Overall, 66,791 claim lines are at issue. Blue Cross asked in interrogatories for information on each billed claim Lymphedema America claims was underpaid. When Lymphedema America bemoaned the time it would take to respond claim by claim, the Magistrate Judge issued a thoughtful, 38-page order explaining what claim-by-claim responses were required and ordered Lymphedema America to amend

---

[6] Doc. 96 at 7.

its interrogatory responses. These responses are the ones Lymphedema America admits it never served. Lymphedema America rightfully withdrew those unserved responses as an exhibit when it discovered its mistake that violated a court order.[7]

So where do unserved and withdrawn interrogatory answers leave us? With the general statement from counsel for Lymphedema America that it wanted unpaid amounts. That wasn't sufficient for discovering the factual basis of liability Blue Cross asked about in discovery, which is why the Magistrate Judge ordered Lymphedema America to respond claim line by claim line. It didn't. So that leaves the Court with no choice but to dismiss Lymphedema America's contract and sworn account claims as to any theory of allowed amounts unpaid.[8]

Even though Lymphedema America's allowed amounts theory cannot survive summary judgment, it raised two other theories of breach: (1) pre-pay review breached the agreement (and the Prompt Pay Act); and (2) Blue Cross's refusal to pay when Lymphedema America billed S8950 and 97140 together breached the agreement.

Lymphedema America's theory that the pre-pay review was a separate breach cannot survive summary judgment. Previously in this order, the Court set aside Lymphedema America's new theory that the pre-pay review violated the Prompt Pay Act and triggered statutory damages. Without those statutory damages, does

---

[7] Doc. 133 ("As a result, we must apologize to the Court and opposing counsel for our mistake, and withdraw Exhibit 2 from our opposition.").

[8] An additional basis for the Court's dismissal of these claims is that Lymphedema America violated a Court order under Federal Rule of Civil Procedure 41(b). This violation prejudiced Blue Cross from meaningfully litigating the case, so the dismissal of this theory, while significant, is proportionate to the harm Lymphedema America caused Blue Cross.

7

Lymphedema America have evidence of damages? No. The only damages Lymphedema America attributed to the pre-pay review arise from the Prompt Pay Act.[9] Accordingly, Lymphedema America's theory that the pre-pay review breached the contract has no evidentiary support for damages and cannot survive summary judgment.

Lymphedema America's remaining theory for breach is that it properly billed codes S8950 and 97140 together on the same date for the same patient and Blue Cross reimbursed neither code. Specifically, Lymphedema America contends that S8950 is a complex lymphedema treatment associated with a pump, while 97140 is manual (and not targeted for lymphedema treatment). As a result, Lymphedema America argues it's medically necessary and appropriate under the contract to perform both treatments at the same time on the same body part, and that the example Blue Cross raised was actually on separate body parts.

Blue Cross counters that: (1) Lymphedema America never points to the part of the agreement allegedly breached; (2) Lymphedema America answered in an interrogatory that it sometimes did not bill both codes on the advice of Blue Cross and can't recover for unbilled work; (3) Lymphedema America has no medical records

---

[9] The sum total of Lymphedema America's substantive response to the pre-pay audit that did not address the Prompt Pay Act is:

> [Blue Cross] ignores the fact that it admitted that it placed [Lymphedema America] on pre-payment review by mistake without a legitimate basis to do so. In other words, [Blue Cross] admits that [Lymphedema America] never should have been placed on pre-payment review status in the first place. Indeed, in 15 years, [Blue Cross] has never once accused [Lymphedema America] of performing services that weren't medically necessary, such that an audit of its claims might be legitimate. [Blue Cross] certainly has not alleged that any of the services at issue here lacked medical necessity.

Doc. 132 at 13.

8

for 41,991 claim lines to show separate work was done for each code; (4) the medical records for the remaining 24,780 claim lines show work done on both codes at the same time. And Blue Cross takes shots at Lymphedema America's declarations and testimony of Hamilton and Claypool for lacking personal knowledge and being conclusory. The Court ultimately agrees with Blue Cross.

Assuming for the sake of argument that Lymphedema America was specific enough in alleging what contract provision was breached, the Court agrees with Blue Cross that Lymphedema America cannot recover for codes it never billed and has no medical records of. This excludes both Lymphedema America's unbilled work and the 41,991 claim lines it has no medical record support for.[10]

So, the Court is down to the remaining 24,780 claim lines that show work done on both codes at overlapping times. Blue Cross contends that code S8950 (complex lymphedema therapy) includes manual therapy and thus includes code 97140. Lymphedema America counters that code S8950 can be complex work like a pump while code 97150 can be manual work—and that work can sometimes be on different body parts. But regardless of which argument is right, the key issue is that the Magistrate Judge previously ordered Lymphedema America to disclose the factual basis for each claim. It failed to do so. Blue Cross raised this issue with respect to

---

[10] This information was supposed to be disclosed in interrogatory responses. Medical records could potentially be an adequate substitute for interrogatory response, but they did not exist for these 41,991 claim lines.

9

the double coding issue.[11]  As a result, the Court must grant summary judgment to Blue Cross on Lymphedema America's claims.[12]

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Blue Cross's motions for summary judgment and dismisses with prejudice the claims of Lymphedema Texas and Lymphedema America.

**IT IS SO ORDERED** this 27th day of April, 2023.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[11] Doc. 125 at 21 ("Having failed to disclose such information in discovery, [Lymphedema America] cannot produce that evidence for the first time at trial.").  While this failure to disclose in discovery bars all of Lymphedema America's theories of recovery, the Court assessed the other merits arguments on the remaining theories to show Lymphedema America its legal impediments to recovery.

[12] As such, the Court need not reach the rest of Blue Cross's arguments, such as those regarding the defects in the declaration and expert testimony.